Hon. FÉLIX P. POCHÉ,
Hon. ROBERT B. TODD,
Hon. CHARLES E. FENNER,
Hon. LYNN B. WATKINS,

$\Big\}$ *Associate Justices.*

---

### No. 1284.

BENJAMIN F. EDWARDS ET AL VS. POLICE JURY OF AVOYELLES ET ALS.

Act 104, of 1886, relative to the removal of the parish seat in Avoyelles Parish, is constitutional in all its parts.

It embraces but one object, and that object is expressed in its title.

It was within the power of the Legislature to allow the removal, on conditions provided for in such cases by the Constitution, viz: The adoption of the law by the electors of the parish and the consent of the property taxpayers voting at such election to pay an increase of taxation beyond the constitutional limit.

It was needless to express the conditions in the title of the law. The enumeration of the one without the other was a superfluity, and is not destructive of the law.

Until the conditions prescribed by the Legislature had been complied with, there existed no authority to undertake the removal.

It is shown that the property taxpayers were not consulted and did not vote at all on the question of increase of taxation beyond the constitutional limits.

The announcement by the Secretary of State that the law had not been adopted was correct.

Edwards et al. vs. Police Jury et als.

A PPEAL from the Twelfth District Court, Parish of Avoyelles.
*Blackman*, J.

*Cullom & Son* for Plaintiffs and Appellees.

1. A special privilege, or power, must be availed of, *Stricti Juris*.

2. The mode, manner, time and extent of enforcing any special right, privilege or authority, granted exclusively by the Consitution, must be construed in accordance with it, and is mandatory.

3. Any special tax authorized to be assessed by the General Assembly, for special purposes, such as are mentioned in articles 202 and 209 of the Constitution of Louisiana, must be *fixed definitely by the General Assembly*, 2 Curt. 439, and the time, manner and mode of carrying such an act into execution must be regarded and t at d as mandatory. 12 Wheat 419 ; 2 A. K. Marsh 75 ; 3 Gill 14.

4. The power to levy a tax is an incident of sovereignty and cannot be delegated by the *Mi souveraine* to another subordinate authority, such as the police jury. 4 Wheat 315; 33 N. Y. 161 ; S. C. Barb 550 ; 8 Hon. 73 ; 4 Cal. 46.

5. Sovereignty is necessarily a unit, the incidents of which cannot be exercised beyond constitutional authority, and then only *Stricti Juris*.

6. That which the Constitution requires to be done for the protection of the taxpayer is mandatory, and cannot be regarded as directory merely.

7. The Act No. 104, of 1886, is unconstitutional, because it authorizes a vote of the property taxpayers to be taken, without specifying the sum to be raised, or fixing the limit of the tax. Parish vs. Geddis et. al., A. 931–2.

8. *If it be held to be constitutional*, the election of Nov. 2, 1886, was illegal and void, because the entire act was not submitted to the voters of Avoyelles, which should have been done, and because of a necessary consequence the act was never adopted in its entirety ; *and because* the *property* tax , or of Avoyelles were never permitted to vote as such, on the question of a specie , was provided for in the act, and required by article 209 of the State Constitution.

9. If the act be constitutional, then the special tax authorized by it was but a necessary incident of, not required to be covered by the title.

10. If the tax authorized to be voted upon was a necessary incident of the act, then the *entire act has never been adopted*,—the election of Nov. 2, 1886, was null—the life of the act has expired, and no election can hereafter be held under it.

11. The consent of the property taxpayers to the special tax was a condition precedent to the adoption of the Act No. 104, without which the act was null, whatever was the vote on the question of its adoption. Or if this be not so,

12 It follows : That a majority of the votes having been cast for the adoption of *a part only of the act*, it was adopted in its entirety, whether the property taxpayers are willing to pay a special tax or not. The *reductio ad absurdum*.

13. By the Act No. 104, of 1886, the police jury of Avoyelles was "authorized and directed to pass ordinances and make all and every provision for carrying out the provisions" of the act. No other could do this. The police jury has not done it, either in whole or in part ; and all that was done was ill gal and null.

14. The General Assembly had t e right to make the adoption of the act depend upon specified conditions. The vote of the property taxpayers as such, *first taken*, on the question of cons nt to pay the n cessary special tax, was a condition precedent, under penalty of the annulling clause of the act.

15. The General Assembly cannot delegate its authority to legislate. Cooley's Con. Lims., p. 116, nor can it make mere propositions to the people, and constitute them law-makers by the ballot. It alone is the law-making power, and specially is it so with regard to all that tends to fix the rate of a special tax.

### T. H. Thorpe for Defendants and Appellants.

1. Special elections authorized by Statute, fixing time and places, may be validly held' notwithstanding the refusal or failure of the police jury or other local authority to order or proclaim the same, as required by the Statute. Cooley's Con. Lim. 757; Dillon Mun. Corp. § 197 (3d ed.) ; Act No. 58 of 1877, sec. 4.

Omissions and irregularities in the holding of an election and return of votes will not vitiate the same, unless they are in matters of essence, and such as effect the result, and a party suing to avoid an election upon such grounds must both aver and prove that they changed the result. Cooley's Const. Lim. 777, 778, 779 ; 12 Ann. 366; 15 Ann. 175; Ibid. 301; 9 Ann. 573, 27 Ann. 507; 29 Ann. 610; Act No. 58 of 1877, secs. 18, 19, 35.

3. The duties of the Secretary of State relating to elections are purely ministerial, and he is without jurisdiction to decide their legal effect. Cooley's Const. Lim. 782, 783, 784; Act No. 58 of 1877, sec. 39; 32 Ann. 579.

4. Courts will not declare a Statute unconstitutional where the record presents other clear grounds of judgment. Cooley's Const. Lim. 196.

5. A proviso repugnant to the body or purview of a Statute will be rejected and the Statute preserved, Kent's Com. 462, 463, ; Dwarris on Stat. 118.

6. A part of a Statute relating to an object not expressed in the title is void and will be rejected ; if the remainder of the Statute is complete, sensible, capable of being executed and effecting the purpose declared in the title, without the aid of that which has been rejected, it will be sustained. Cooley's Const. Lim. 211, 212, 213 ; 13 Ann. 306; 32 Ann. 726; 33 Ann. 783; ibid 254; 35 Ann. 1141; 35 Ann. 960.

7. The title of a Statute is the conclusive index of the legislative intent as to what shall have effect. Cooley's Const. Lim. 179, 170.

8. In order that the unconstitutionality of a part of a Statute shall have the effect of nullifying the whole, the two parts must be so mutually and necessarily dependent upon and connected with each other in essence and meaning that the constitutional portion is utterly incapable of effecting the apparent legislative intent without the aid of that which is unconstitutional. Cooley's Const. Lim. 211, 212, 213; 32 Ann. 726.

9. An unconstitutional condition is powerless to avoid an otherwise valid law, unless it be a condition of necessity; if it be merely matter of option or permission, it will not have that effect. It does not warrant the belief that the Legislature would not have passed the Statute without such condition. U. S. Sup. Ct. Rep. (April, 1887), p. 588.

10. When it is possible so to do, it is the office and duty of courts so to construe legislative enactments as to give them effect. Cooley's Const. Lim. 220 ; 19 Ill. 376, 384; 4 N. H. 16, 18; 17 N. Y. 241 ; 16 Gray, 417.

11. The Legislature is powerless to add to the constitutional qualifications of electors, or to take away or limit power directly conferred by the Constitution.

12. The enabling act of an article of the Constitution can contain no provision antagonistic to the title or spirit of the article which the Legislature proposes thereby to render effective, and if such antagonistic provision be found, it will be rejected by the courts, and so much of the Statute will be sustained as gives effect to the constitutional article. 35 Ann. 960.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to prevent the removal of the parish seat of the Parish of Avoyelles from Marksville to another point in the parish.

The grounds upon which the suit rests are : That the Act of 1886, No. 104. relative to such removal, is unconstitutional, and if not such, that the requirements of said act have not been complied with.

The defense is that the act is constitutional to a certain extent, and unconstitutional as regards part of a section, and that the constitutional exigencies having been observed, the removal can be legally effected.

The district judge considered the act as unconstitutional in all its parts, and made peremptory the injunction issued *in limine* to prevent the removal.

From this judgment the defendants appeal.

In relation to the grounds upon which plaintiffs rely to assail the constitutionality of the act, it may be sufficient to say that the power of the General Assembly cannot be doubted to authorize, by appropriate legislation, the removal of the parish seat; but that this power can be exercised only when the qualified electors, or a majority of them, consent to it, and, if the constitutional limit of taxation is to be increased thereby, where the property taxpayers of a parish, entitled to a vote, or a majority of same, voting at such election, shall have voted for such increase.

Indeed, the power to remove a parish seat is not only not denied the Legislature by any constitutional limitation or prohibition, but is expressly conferred by article 250, which is to the effect that any law passed, contemplating such purpose, shall not go into effect until after submission to and approval by the qualified electors of the parish. This is so truly so that it is left entirely discretionary with the Legislature to initiate the question, or refrain altogether from agitating it.

The electors of the parish have no constitutional right to operate the removal. All they can claim is a law authorizing the removal, subject to their approval; but this right is subordinate to the will of the Legislature to move or not in the premises.

The real ground of complaint urged by the plaintiffs is simply that the conditions imposed by the act of the removal have not been complied with, namely: That the police jury did not act as the Statute had commanded, and that the sense of *both* the electors and the property taxpayers, touching the removal and the increase of taxation, have not been ascertained.

The contention of the defendants is that the act is constitutional so far as it refers to the action of the police jury and provides for an election by the electors; but that it is unconstitutional in that portion of it which requires as a *sine qua non* condition that the property taxpayers shall be likewise, and at the same time, called upon to vote.

In support of this position, it is urged: That the act could not legitimately embody the obnoxious provision and that the title could not and did not embrace it.

It is further contended that, although true it be that the General Assembly required that the police jury should make all necessary provisions to hold the election, yet the omission on their part, as a body, to observe those directions, did not invalidate the election held to take the vote of the electors, for the reason that the electors could themselves — the essential provisions having been made in the Statute — have held the election validly, independent of any action of the police jury.

It would be premature to consider, at this stage, the questions of fact raised by the plaintiffs respecting the non-observance of the conditions imposed by the Legislature, in as much as the validity or invalidity of the Statute must, at the threshold, be determined, for it is only on the assumption of its constitutionality in its entirety that the inquiry can arise, whether its behests have been observed.

The defendants admit and insist that the act is constitutional, as concerns all its provisions, save the portion of the *fourth* section, directing the taking of the sense of the property taxpayers, at the same election, and providing that, in the event of there being a majority of votes against the special tax, the act is to be of no effect, whatever may be the vote cast on the vote of removal.

We will therefore now proceed to consider the question of unconstitutionality raised by the defendants, viz: Whether the last *proviso* of section 4 could legitimately have been inserted in the act, and is or not covered by the title of the act.

The Constitution assuredly provides that " every law enacted by the General Assembly shall embrace but *one* object, and that shall be expressed in the title."

Hence, it is argued by the defendants that, as the act contains *two* distinct and discordant objects, only one of which is indexed in its title, it follows that the other object, which could not be incorporated in the act and was not expressed in the title, must be deemed unconstitutional, and therefore not included in the law, which, without it, can well stand and be executed as a piece of legislation.

The premises granted — *positis ponendis* — the conclusion would be irresistible; but the premises are a fallacy, resulting from a confusion of ideas on the subject.

It is elementary that, although no act can have more than one object in view, which must be announced in its title, still it is needless that the title should enunciate the various ways and means to which the law-giver may resort to accomplish the purpose in view, for it has been well observed, from a practical consideration, that otherwise the title

would be as lengthy as the body of the act, which by all means should be, as much as practicable, avoided, as titles ought to be brief and generic.

It is error to suppose that the *proviso* of the fourth section could not form part of the act, for not only is it germane and congruous, but also an eminently proper and wise appendage.

It is not, in itself, susceptible of forming the isolated purpose of independent legislation, disconnected from all reference to the other portions of the act, without which it would be unintelligible.

The adoption of the act by the Legislature, and its approval, on submission, by the electors, without a vote, ordered expressly or impliedly, by a majority of the property taxpayers in case of an increase of taxation, might have proved *brutum fulmen*, for how could the parish seat be removed, and another provided for, where the limit of taxation has been reached, unless provision were made for the removal and relocation of the same?

In the petition it is alleged, and the record shows, and it is not denied, that an increase of taxation would be unavoidable.

It is apparent that the legislative intent, the sole object which the General Assembly had in contemplation, was the *removal* of the parish seat from Marksville to another point in the parish, and, as a precautionary measure, the ways and means required to accomplish such removal were provided for.

The General Assembly was well aware of the provisions contained in articles 250 and 209 of the Constitution, which provide: the *former*, that laws removing parish seats shall, before taking effect, be submitted to the electors of the parish to be affected thereby, at a special election held for that purpose, and be adopted by a majority of votes cast at such election ; the *latter*, that for the purpose of erecting and constructing public buildings, the rates of taxation limited by the article may be increased, when the rate of such increase, and the purpose for which it is intended shall have been submitted to a vote of the property taxpayers of the parish, entitled to vote, under the election laws of the State, and a majority of same, voting at such election, shall have voted therefor.

The Legislature may well be presumed to have had knowledge of the financial condition of the parish in question, or at least to have foreseen the contingency of an increase of taxation, beyond the constitutional limit, to accomplish the removal, including the price of the acquisition of the necessary spot, and the cost of construction and fitting up of the building.

It was therefore legitimate and prudent for the General Assembly, when legislating on the removal,.to embody in the act the conditions upon which it would be effected, namely : the consent of a majority of *both* the electors generally and property taxpayers voting on the occasion.

The conclusion seems irrestible : That the act had but one object— the removal — which was expressed in its title ; that the conditions attached to the removal are not discordant ; but on the contrary, harmonious ; that it was useless to insert them explicitly in the title ; that mention of the one therein, without the other, was a superfluity, and that the omission to mention that other is not destructive of the act.

The contention may also be considered from another determining standpoint.

The legislative power and authority to abstain from removing the parish seat are absolute and unlimited.

The first essential prerequisite to the removal is the expression of the legislative will to that effect, in the shape of a law for the purpose. It is perfectly clear that it cannot be removed, except in execution of such a law.

In this case the Legislature has clearly refused to give its consent to such removal, except in compliance with the condition expressed in the *proviso.*

The statement made by the counsel for the removalists establishes this beyond a doubt, for he tells us that the bill, as originally passed by the House, contained no such *proviso ;* that the Senate refused to pass it without such *proviso,* and amended the bill by inserting it, and that, as amended only, it received the concurrent vote of the two Houses and the signature of the Governor.

How can it be said that the Legislature has authorized the removal, except on compliance with the explicit requirements of the *proviso ?* not being complied with, the legislative authority does not exist, and matters stand as if the law had never been passed.

It is of no consequence, possibly, whether the *proviso* is constitutional or not.

If constitutional, of course it must be complied with.

If unconstitutional, then it is clear that the whole law must fall, because obviously the Legislature would not have passed the law at all, without the *proviso,* as it actually refused to pass it until the *proviso* had been inserted.

The legislative assent does not exist except on condition of compliance with the *proviso*. The *proviso* has not been complied with. The parish seat cannot be removed without the consent of the Legislature. *Ergo*, it is not removed.

Coming now to the questions of fact averred in the petition, it is enough to say that it is needless to determine whether the police jury had to comply with section 2 of the act, which contemplated setting them in motion, for had the police jury complied with its provisions, our conclusions would remain unaffected.

It is evident that the sense of the property taxpayers voting at the election was not sought and ascertained.

Their abstention from voting at all cannot be construed into a vote *in favor*, but ought rather to be regarded as a vote *against* the increase of taxation, as the Constitution requires, to justify such increase, that " a majority of same, voting at such election, *shall have voted therefor*." Art. 209.

The Secretary of State was therefore correct when promulgating the result of the election he announced that the act had not been adopted.

Judgment affirmed.

Poche, J., absent.