O’NIELL, J.
The question presented is whether the Act No. 20 of 1918, establishing a prohibition zone around Camp Beauregard while the government was engaged in war, is unconstitutional or invalid, for any of the reasons urged by appellant. He was prosecuted and convicted for bringing into the dry zone nine quarts of intoxicating liquor, in violation of the statute.
The object of the law referred to is expressed in the following title, viz.:
“To prevent and prohibit, throughout the period in which the United States may be engaged in war, the sale, barter, exchange, or other traffic of or in spirituous, malt or vinous liquors, or medicated bitters capable of producing intoxication, within twenty-five miles of Camp Beauregard, in the state of Louisiana, when and while said camp is being used for the training, quartering or holding of soldiers; to prevent and prohibit the transportation of such liquors into such territory; to prohibit the issuance of licenses for the sale of and traffic in such liquors within such territory, and to revoke and annul all such licenses in force; to provide punish *365 ments for tlie violation of * * * this act, and to provide speedy trials for all prosecutions therefor; and, generally to provide for- the suppression of all liquor traffic in said territory during the time in which the United States may be engaged in war, and when and while said Camp Beauregard is used for the purposes aforesaid.”
Appellant’s complaints or contentions are:
First. That the law in question violates both requirements of article 31 of the Constitution, viz.: (1) That a statute shall have only one object; and. (2) that its object shall be expressed in its title.
Second. That, being a local law, the provisions for speedy trials of prosecutions violates the inhibition, in article 48 of the Constitution, against the enactment of local laws concerning either civil or criminal actions.
Third. That the statute is an attempt to prohibit the sale of intoxicating liquor within the prescribed territory, and is therefore violative of article 181 of the Constitution, which, by authorizing the enactment of regulative measures regarding the -sale of intoxicating liquors, implies that a prohibition law shall not be enacted.
Fourth. That the statute in question conflicts with the act of Congress, approved May 18, 1917, known as the Conscription Act, section 12 of which act requires only a 5-mile dry zone around Camp Beauregard (40 Stat. 82, c. 15; Comp. St. § 2019a).
Opinion.
[1-3] The enactment in question had only one object — to make Camp Beauregard bone dry, by suppressing the liquor traffic within 25 miles from the camp, while the United States was engaged in war and while the camp was being used for quartering and training soldiers. That purpose was expressed in the title of the act as plainly as language could express it. All of the incidental expressions, as to the object of the law, i. e.: (1) To prohibit and prevent transportation of intoxicating liquor into the prescribed zone; (2) to forbid the granting of any license, and to revoke those already issued, for the sale of intoxicating liquor in the zone; and (3) to provide punishment for a violation of the law, and speedy trials for persons accused of violating it, were only reasonable and appropriate means of carrying out the main and only object, to dry-zone Camp Beauregard during the war and while soldiers were in training or quartered there. It is hardly worth while repeating what has been said so often, that the constitutional requirement that a statute shall have only one object does not mean that each and every means that may be deemed appropriate for accomplishing the object shall be provided for by a separate act.
It is said that one of the provisions of the act is not expressed' in its title; that is, the provision for a refund to the licensee of a proportionate part of the tax paid for any license that shall be revoked. That is a ‘matter of detail which seems to have had no place in the title of the act. The title of a statute is intended to be a brief and convenient index to its contents; and it would not serve that purpose if the Legislature were required to put into the title every detail appearing in the body of the law, and thus make the title a copy of the act itself.
[4, 5] The appellant in this case, however, does not appear to have any interest in questioning the validity of the section of the statute that provides for a refund of a proportionate part of the license tax when a license is revoked. The validity of that provision of the law might be contested in a case where a licensee was denied the refund, on revocation of his license. But it seems to be a moot question as presented here. And that appears to be true of the two complaints which we will consider next.
It is argued that the object of this law is not stated in its title because, in the title. *367 the dry zone is described as “within 25 miles of Oamp Beauregard”; whereas, in the body of the act, it is described as “within the radius of 25 miles of Oamp Beauregard.” It is said that the latter expression- describes a circle, having a radius of 25 miles, measured from the center of the camp; whereas, the expression in the title of the act takes in all of the geographical area within 25 miles from the boundary lines of the camp. The argument, in effect, is that the statute is not so broad in its terms as its title indicates. The force of the argument depends upon whether the word “radius” is used in its geometrical sense. It does not appear, however, that the offense alleged to have been committed within 25 miles from Camp Beauregard, in this case, was not committed within a radius of 25 miles from the center of the.camp. In other words, the question of guilt or innocence of the defendant in this case does not depend upon whether the word' “radius” in the statute is used only meta-, phorically or geometrically. The word is often used metaphorically and loosely, as, for example, when we speak of the radius of a man’s commercial activities or of one’s social circle. It will be time enough to consider and decide, when we have a case where the question of guilt or innocence depends upon the construction of the law in that respect, whether the word “radius” is used in its geometrical sense or merely to describe an area conceived of as bounded by lines drawn around the camp 25 miles distant from its boundary lines.
[6] The inhibition, in article 48 of the Constitution, that the General Assembly shall not pass any local or special law concerning any civil or criminal actions, is invoked here with reference to section 8 of the statute, making it the duty of any judge having on his docket prosecutions for violation of this act to convene court at least once in every two weeks and try such cases by preference over other suits. The record does not show that court was convened for the special purpose of trying this case or cases of this character, or that a preference or speedy trial was had in this case or in cases of this character. If the defendant did have a speedy trial, he should not complain of having had a right which the Constitution guaranteed him — which many accused persons do not have, and which very few want. It will be time enough to consider and decide the question of validity of that section of the statute when we have a case where a judge has refused to obey it. It is only a moot question in this case.
As to the three complaints last considered, therefore, it is sufficient to say that the defendant has no interest in questioning, and therefore no right to question, the constitutionality or validity of provisions of the law which are irrelevant to his case, and which, if they were unconstitutional or invalid, would not invalidate the provisions of the law that are applicable to the case. See State v. Doremus, 137 La. 269, 68 South. 608; State v. Emile, 140 La. 830, 74 South. 163; State v. Guidry, 142 La. 424, 76 South. 843. The last section preceding the repealing clause of the act in question provides that, if any section or provision of the statute should be held unconstitutional or invalid, the holding should not affect any other part or provision of the act, and such other parts and provisions should remain in full force and effect. The provisions of the law that are applicable to this case would not be affected by a ruling that any of the three provisions complained of are unconstitutional or invalid, viz., (1) for refunding part of a revoked license tax, (2) for shaping the zone like Oamp Beauregard instead of circular, and "(3) for speedy trials of prosecutions under the statute.
*369 [7, 8] The next question to be decided is whether the enactment in question was forbidden by article 181 of the Constitution, viz.:
“The regulation of the sale of alcoholic or spirituous liquors is declared a police regulation, and the General Assembly may enact laws regulating their sale and use.”
The learned counsel for appellant argues, quite logically, that, as the General Assembly might have exercised its police power to enact laws regulating the sale and use of alcoholic or spirituous liquors, without the special authority conferred by article 181 of the Constitution, the only conceivable purpose of that article was to limit the Legislature’s authority, regarding the sale and use of alcoholic or spirituous liquors, to the enactment of regulative measures; and that, by necessary implication, the Legislature was forbidden to enact a state-wide prohibition law. As that proposition is not disputed— but is virtually conceded' — by the ,leamecl counsel representing the state in' this case, and as a contrary view would not affect our decision, we will proceed upon the' premise that the accepted interpretation of article 181 is correct. It follows, logically, that the' question, whether any particular statute imposing restrictions upon the sale of intoxicating liquor is only a reasonable regulation or amounts to prohibition, is a matter for the courts to determine finally. ■
The argument of the appellant is that the Legislature had no more authority to enact a prohibition law for a 25-mile zone than to make the dry zone state-wide; in other words, that, there being np degrees of right or wrong, a prohibition law for a zone 25 miles wide is as unconstitutional as if it were state-wide. But that is arguing in a circle; for the question is not whether this law was a mere regulation or was strict prohibition within the territory' and during the time to which it was limited. Unquestionably, the statute. did not regulate, but absolutely prohibited, the sale of intoxicating liquor within the area and during the time to which the law was limited in its operation. And the only question is whether, with its limitations as to place and time, the law was a reasonable regulation, not forbidden by the supposed inhibition of article 181 of the Constitution. Our opinion is that; with its limitations, the enactment must be- regarded, from a state-wide view, as a very reasonable and proper regulation of the retail liquor business, notwithstanding it was a strict prohibition law within its limitation of time and place.
There is a law (section 8 of Act No. 176 of 1908, p. 241) that forbids the granting of a license or privilege to conduct a barroom or sell intoxicating liquor within 300 feet from any church or any school where children are taught. The constitutionality of that statute has been contested on many grounds, but it does not appear to have been thought that it violated article 181, in so far as it is a prohibition law within the area referred to. Even if the state should so progress along religious or educational lines that a prospective retail liquor dealer could not draw a circle, from any spot in the state as his center and with a radius of 300 feet, and embrace a population .sufficient to support a barroom, without also encircling a church or a school where children are taught, we doubt Very much that the court would have to come to his relief, annul the law, and let the barroom come nearer to the step of the altar or the schoolhouse door. The law also prohibits the sale of intoxicating liquors to women and children, inebriates and insane persons; it forbids selling intoxicants to white and colored men on the same premises, or conducting a barroom in connection with a grocery store or gambling place, or with music, boxing contests, wrestling matches, or other such enticements or entertainments. That is state-wide prohibition against selling intoxicating liq *371 uors to the classes of persons, or in any of the places or under any of the conditions, proscribed. The Sunday law and the law that closes barrooms on election days are statewide prohibition laws on those days. Yet no one has ever thought, as far as we know, that any of those laws, for that reason, violated an implied inhibition in article 181 of the Constitution.
The law being, after all, in our accepted scheme of government, nothing more nor less than the unconscious resolve of society that all of her members must act as the majority thinks proper, the time may come when the laws regulating the sale of intoxicating liquors will be so burdensome as to suppress the traffic altogether. It will be time enough when that time comes, or when it can be reasonably argued that that time has come, for us to decide whether the framers of the Constitution, in writing article 181, intended that the courts should see to it that the reforms in the “laws regulating their sale and use” must not put the alcoholic and spirituous liquors out of business.
Although there was nothing in the Constitution of 1879 and there is nothing in the present Constitution, as far as we know, on the subject of local option laws, the Legislature, by the Act No. 76 of 1S84 (amending sections 1211 and 2778, R. S.), and by the amending Act No. 221 of 1902, delegated to the police jury of each and every parish and to the municipal council of each and every city, town, and village, authority to adopt local prohibition by a majority vote of the electors of the parish or municipality. 'When a parish or municipality goes dry, under the local option law, it is not by virtue of the local election, but by virtue of the local option law, without which the election would have no force or effect whatever. And, if every parish in the state should thus go dry, we doubt that the local option law could be said to have violated the spirit of article 181 of the Constitution, by bringing about state-wide-prohibition. "What the Legislature has done by direct legislation for the 25-mile zone around Camp Beauregard is no more than it had done by indirect legislation for every parish and municipality in the state.
The decisions cited by the learned counsel for appellant are not contrary to the opinion we express here. For example, in Minden v. Silverstein & Dittman, 36 La. Ann. 914, in sustaining a municipal Sunday law, it was said that the power to regulate or restrict should not be confounded with the power to prohibit the inherent right of a citizen to pursue a legal avocation, trade, or calling; that the distinction was recognized in the jurisprudence everywhere, especially between the right to regulate and the right to prohibit the sale of intoxicating liquors. In State ex rel. Lisso v. Police Jury of Red River Parish, 116 La. 767, 41 South. 85, the ruling was that the police jury could not, by levying a prohibitive license tax, establish prohibition in the parish in violation of the requirement of the local option law, that the question of prohibition vel non should be decided by vote of the electors in a special election to be called for that purpose. The question was whether the police jury had exceeded the powers conferred upon that subordinate branch of the government by the statutes of the state. The statute on the subject plainly limited the power of police juries to the regulation of the sale of intoxicating liquors • and expressly conferred upon the citizens of each parish the right to say, by their vote, whether the sale of intoxicating liquors should be prohibited. Article 181 of the Constitution, which alone controls the state Legislature, .in that respect, is not so explicit. In Shreveport v. Schulsinger, 113 La. 9, 36 South. 870, 2 Ann. Cas. 69, the ruling was that a municipal ordinance confining poolrooms and turf exchanges to a defined district, and abolishing them elsewhere in the *373 city, was only a regulative measure with regard to the entire territorial, jurisdiction of the municipal government. In like manner, a state statute which, for a good and valid reason, prohibits the sale of intoxicating liquor in a limited part of the state, is only a regulative measure with regard to the whole state.
In considering whether the Act No. 20 of 1918 was a reasonable regulation — a. legitimate exercise of the state’s police power — it is not possible to overlook that it was a war measure, enacted in a crisis, when individual rights, private interests, and personal liberties, of all others as well .as of the liquor dealer and consumer, had to be put aside for the grave task in hand. If prohibition for any locality can ever be looked upon from a state-wide view as only a regulative measure, it must be so for a training camp or cantonment, filled with young American manhood, that has to be made into an army of trained soldiers, and made ready in the shortest time possible, for the common defense. The General Assembly thought that the pernicious influence of intoxicating liquor might hamper the young men in the training they needed for the sacrifice they were willing to make — - thought that the selling of intoxicating liquor within 25 miles from the training camp might militate against the work of the officers intrusted with the young men’s training. On that question we are not disposed to' take issue with the General Assembly. And we have not found anything in article 181 of the Constitution standing in the way of such legislation.
[9] The contention that this statute conflicted with the Conscription Act is without merit. The act of Congress, conferring upon the President authority to prohibit the sale of intoxicating liquor within 5 miles from the training camp, did not interfere with the state’s police power to establish a 25-mile dry zone around the camp. The state Legislature had in mind the civilian as well as the soldier, in abolishing the danger of the blights of intoxicating liquor. Thousands of the state’s young citizens had been taken from their homes to the camp. The General Assembly thought the law would have to supply the want, in some measure, of the deterring influence of the home and family; that 25 miles would not be at all too far to remove the temptation, nor too far for the arm of the law to reach, to lay the hand upon the blind tiger. Nothing in the act of Congress interfered with the exercise of the General Assembly’s judgment in that respect.
The judgment is affirmed.
DAWKINS, J., takes no part.