(105 So. 556)

No. 27267.

## CHIRO v. FOURTH JEFFERSON DRAINAGE DIST.

(July 13, 1925. Rehearing Denied Oct. 6, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Drains** ⊛⊸49—Specifications permitting bidder to design buildings held not unusual provision in contract for pumping stations.

Specifications for pumping stations in drainage district providing that work to be done by contractor consisted in designing and constructing, thereby permitting prospective bidder to design his own buildings, *held* not too uncertain from bidder's point of view, being clause usually incorporated in such proposals.

2. **Drains** ⊛⊸49—Requiring bidder to furnish specifications and plans, and providing for charges and prices to be agreed upon, held not uncertain and risky.

Requirement in bids and proposals for pumping stations in drainage district that contractor furnish his plans and specifications, and providing for charges and prices to be agreed upon by contractor and engineer to be submitted with his bid, with such modifications as may have been actually agreed upon, *held* to cover nothing but minor changes in plans, and therefore did not render it uncertain from bidder's point of view and too risky from that of board of commissioners.

3. **Drains** ⊛⊸49—Necessary minor changes customarily provided for in contract for pumping stations held within power of public corporation to stipulate.

Necessary minor changes are not only provided for customarily in contracts for construction of pumping stations, but are within power of public corporation to stipulate, without rendering contract invalid and without subjecting drainage district to claims for loss of profits.

4. **Drains** ⊛⊸49—Specifications that engines must operate on fuel oil of named specific gravity held not indefinite.

As contractor was required to furnish all machinery for putting in operation and testing four pumping stations complete in every respect, specifications, providing that each engine must be capable of operating satisfactorily on fuel oil having gravity of 16 Baume, *held* not indefinite, because they did not specifically provide that contractor furnish apparatus for preheating the fuel oil.

5. **Drains** ⊛⊸49—That bidders for pumping stations were allowed to design own buildings held not to interfere with free right of competition.

Where specifications for pumping stations showed that buildings were not to be designed by contractors, except as to size and shape necessary to provide housing for particular machinery, free and fair competition was not interfered with, because bidders were allowed to design their own equipment and buildings.

6. **Drains** ⊛⊸49—Lumping or bulking work in bids for pumping stations held usual and desirable.

Lumping or bulking of work in bids for pumping stations, instead of letting it by separate bids, *held* in view of evidence, to be provision both usual and desirable in specifications for pumping stations in drainage district.

7. **Drains** ⊛⊸49—Specification, requiring fuel oil storage tanks should be erected on earth foundations, held proper one.

Specification for pumping stations in drainage district, requiring that fuel oil storage tanks should be erected on earth foundations, *held* proper one, and not bad engineering in view of expert testimony thereon.

8. **Drains** ⊛⊸49—Objection that specifications failed to specify fuel oil consumption held without merit.

Since Diesel engines, which were specified in advertising for bids and proposals for pumping stations in drainage district, have about same fuel oil consumption, complaint, that fuel oil consumption was not specified, *held* without merit.

9. **Drains** ⊛⊸49—Fact that specifications exclude some engines of certain type held unimportant.

Where specifications for pumping stations in drainage district provided that at no head on any unit should maximum load exceed that which would require mean effective pressure in excess of 71 pounds per square inch, mere fact, that some engines of certain type were thereby excluded, was unimportant.

10. **Drains** ⊛⊸49—Specifying four-cycle engines for pumping stations held within discretion of drainage district board.

It was matter within discretion of drainage district to specify four-cycle engines and not the two-cycle type.

**11. Injunction ⊘74—Courts will not control discretion of public board, unless unreasonably exercised.**

Unless public board's discretion is unreasonably, arbitrarily, or fraudulently exercised, courts will not undertake to control it or to substitute their discretion or that of engineers for that of public body charged with doing of work.

Appeal from Twenty-Fourth Judicial District Court, Parish of Jefferson; L. Robert Rivarde, Judge.

Action by Julian Chiro against the Fourth Jefferson Drainage District. Judgment for defendant, and plaintiff appeals. Affirmed.

F. A. Middleton, of New Orleans, for appellant.

A. Giffen Levy and John Dymond, Jr., both of New Orleans, for appellee Fourth Jefferson Drainage Dist.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, of counsel representing one of the bidders.

LAND, J. The president of the board of commissioners of defendant drainage district advertised for sealed bids and proposals for furnishing the machinery, equipment, and all material necessary for, and constructing complete in every detail, as per plans and specifications prepared by the engineer of said board, four pumping stations in Sub-Drainage District No. 3 of the Fourth Jefferson Drainage District.

Plaintiff, a taxpayer residing in said drainage district, then obtained a temporary restraining order enjoining defendant drainage board, its president, and its engineer, from accepting bids or awarding contracts for this work.

The rule to dissolve was tried on the merits, by agreement of counsel, and judgment was rendered, recalling and vacating the temporary restraining order, and dismissing and rejecting plaintiff's demand.

Plaintiff has appealed, and presents to us for review numerous grounds of objection to the plans and specifications for said work, as the basis for the issuance of the temporary restraining order herein granted, and herein sought to be reinstated.

[1, 2] 1. The "specifications" provide that "the work to be done by the contractor consists in designing, constructing, furnishing, and transporting to sites all machinery, material, of every kind and miscellaneous equipment therefor, erecting, putting in operation, and testing, four pumping stations, complete in every respect."

That "these specifications and accompanying drawings have been prepared with a view of receiving proposals for various types of pumps, engines, housing structures, and all necessary auxiliary equipment to be furnished by the contractor."

That "within thirty days after the execution of the contract, the contractor shall furnish to the engineer, in triplicate, the complete specifications submitted with his bid, with such modifications as may have been actually agreed upon, together with complete working drawings, of equipment and installation."

That "these specifications and drawings so furnished, shall be marked 'contractor's specifications' and 'contractor's plans,' and after approval thereof by the engineer, copies, duly certified by the engineer, shall be filed with the board and the contractor, and shall become a part of the contract as fully as though they had been prepared prior to the date of the contract and attached to and made a part of the contract at the time of its execution."

Plaintiff objects to the provision in said "specifications" permitting a prospective bidder to design his own buildings as not a sound provision, but an unusual one, and complains that the clauses requiring the contractor to furnish "contractor's plans" and "contractor's specifications," and providing for charges and prices to be agreed upon by the contractor and engineer is too uncertain

from the bidder's point of view and too risky from that of the board of commissioners, and that, by making certain charges, the lowest bidder might possibly become the highest bidder.

A number of engineers of the highest standing have testified in this case, and the large preponderance of the expert testimony is to the effect that these clauses are such as are usually incorporated in specifications of this kind, and that the clause as to modifications cannot be understood to cover anything but minor changes in the plans.　.

[3] Necessary minor changes are not only provided for customarily in contracts of this character, but have been repeatedly recognized as clearly within the power of a public corporation to stipulate, without rendering the contract invalid, and without subjecting such public corporation to claims for loss of profits. Donelly on Public Contracts, p. 252, § 160; McQuillin on Munic. Corp. vol. 4, § 1921; vol. 7, § 1272; Geary v. Board of Commissioners, 139 La. 781, 72 So. 245.

[4] 2. The "specifications" provide that "each main engine must be capable of operating satisfactorily on fuel oil having a specific gravity of 16 Baume and meeting its full guarantees when using such fuel."

Sixteen degree Baume is an oil that resembles asphalt, and would not flow at an ordinary temperature through pipes; but has to be heated to flow through a pipe. Plaintiff complains that the specifications are indefinite in that they do not specifically provide that the contractor shall furnish apparatus for preheating this fuel oil.

This objection is without foundation. The engine is required when using 16 degree Baume oil to operate properly, "meeting its fuel guarantees"; the contractor is required to furnish and transport to sites "all machinery, material of every nature and miscellaneous equipment therefor, erecting, putting in operation, and testing four-pumping stations, complete in every respect," and it is further provided in the specifications that "in case the machinery fails to meet the guarantees of the contractor, but is satisfactory in all other respects; the contractor shall have the privilege of making such changes, at his own expense, as will be necessary to meet his guarantees."

Defendant's witnesses, skilled engineers of long experience, do not consider that the specifications are vague as to the requirement of apparatus for heating the oil, but assert that in this respect they are sufficiently clear and definite.

[5] 3. As the specifications show that the buildings are not to be designed by the contractors, except as to size and shape, necessary to provide housing for the particular machinery, and that the foundations, strength of steel structure, material, etc., are all specified, the complaint of plaintiff that, as the bidders are allowed to design their own equipment and buildings, there would be no competition, is without serious foundation.

As different bidders make engines of different sizes and dimensions, necessarily buildings to house their engines must differ slightly in size.

The board studiously avoided in the specifications the designation of a house of a particular size, as the specifications and drawings were prepared with a view of receiving proposals "for various types of pumps, engines, housing structures," etc.

Every important detail has been specified by the board, and the mere question of size has been left to the bidders.

Under these circumstances, free and fair competition could not be interfered with, as contended by plaintiff.

[6] 4. The objection of plaintiff to the lumping or bulking of the work, instead of letting by separate bids, is not well founded, as the evidence shows, by a fair preponderance, that such provision is both usual and desirable in the case of a drainage district.

[7] 5. Plaintiff also condemns the provision in the specifications requiring that fuel oil storage tanks should be erected on earth foundations.

The expert testimony shows clearly that such a specification was a proper one, and was not bad engineering.

[8] 6. The complaint of plaintiff that the lubricating oil consumption was specified, but that the fuel oil was not specified is without merit, as all Diesel engines, which are specified, have about the same fuel oil consumption, but vary widely in different makes in the consumption of lubricating oil.

[9] 7. The specifications provide that "at no head on any unit shall the maximum load exceed that which will require a mean effective pressure in excess of 71 pounds per square inch, when delivering the quantity of water guaranteed."

Plaintiff attacks this provision as shutting out as bidders those admittedly good engines having a mean effective pressure of more than 71 pounds.

As about ten or a dozen bidders could bid on this work under the specifications, and as the drainage district has the right to select the best engine in its judgment suited for the service, the mere fact that some engines of a certain type are excluded is unimportant.

[10] 8. It is also objected by plaintiff that by specifying four-cycle engines, and not specifying two-cycle types also, competition has been illegally restricted. It is true that the experts disagree as to the types of engine to be preferred. This, however, is of no particular moment, as it is a matter within the discretion of defendant drainage board.

[11] It is well settled that, unless a public board's discretion is unreasonably or arbitrarily or fraudulently exercised, the courts will not undertake to control it, or to substitute their discretion or that of the engineers for that of the public body charged by law with the doing of the work. Brennan v. Sewerage & Water Board, 108 La. 569, 582, 32 So. 563; State v. Mayor, etc., of Village of Dodson, 123 La. 903, 915, 49 So. 635; City of New Orleans v. Steinhardt, 52 La. Ann. 1043, 1048, 27 So. 586; Murphy v. Police Jury St. Mary Parish, 118 La. 401, 410, 42 So. 979.

"The grant of power to provide for a drainage system carries with it the power to determine what system shall be provided, and the exercise of that discretion cannot be judicially interfered with or questioned, except where the power is exceeded, or fraud is imputed and shown, or there is a manifest invasion of private rights, or gross abuse." Parker v. Mayor, etc., of Monroe, 128 La. 951, 957, 55 So. 587, citing numerous authorities.

In the present case there is a total absence of any charge or proof of fraud, bad faith, or improper motives imputed to defendants. All of the objections urged by plaintiff to the specifications involve matters affecting the discretion of defendant drainage board, except as to "changes," the clauses as to which are usual and customary and include only modifications of a minor character.

Judgment affirmed.