(139 So. 481)

McCANN et al. v. MAYOR AND COUNCIL-
MEN OF MORGAN CITY.

GILMORE et al. v. SAME.

Nos. 31453, 31454.

Jan. 4, 1932.

Brumby & Bauer, of Franklin, and Daniel DeBaillon, of La Fayette, for appellants.

Wise & Wise, of Morgan City, and Rene H. Himel, of Franklin, for appellee.

LAND, J.

The above cases were consolidated in the lower court. for purposes of trial.

On July 8, 1930, an election was held within the municipal limits of Morgan City, La., to determine whether the qualified resident electors of the municipality should authorize the mayor and councilmen to issue bonds in the sum of $175,000 for the purpose of constructions, extensions, and improvements of the present municipal waterworks plant and system, so as to constitute a combined or single water, electric light, and power plant, and thereby furnish a more efficient service at less operating cost.

The bonds were to be issued under the provisions of article 14, § 14 (m) of the Constitution of 1921, and under the provisions of Act No. 80 of the Extra Session of 1921, and were to run from one to fifteen years.

The principal and interest of the bonds were to be secured by mortgage on the lands, buildings, machinery, and equipment, and by pledge of the income and revenues of the proposed combined or single municipal water, electric light, and power plant, and the bonds were not to be a charge upon the other income and revenues of Morgan City.

Plaintiffs in each of the consolidated cases, alleging themselves to be duly qualified resident taxpayers and electors of Morgan City, attack the resolution calling the election, the election itself, the mortgage to be executed, the security to be given, and the bonds to be issued thereon, as illegal, null, and void and of no effect; and pray that the municipality of Morgan City and its governing authority, the mayor and councilmen, be perpetually enjoined from giving such security, executing such mortgage, or issuing or negotiating such bonds, or in anywise proceeding further therewith.

Judgment was rendered in the district court in each of the consolidated cases, rejecting the demands of plaintiffs and dismissing their suits at their cost.

From these judgments, plaintiffs have appealed.

1. Act No. 80 of the Extra Session of 1921 is attacked by plaintiffs as unconstitutional on the grounds: (a) That the act violates article 3, § 16 of the state Constitution in that the object is not fairly expressed in its title and the title itself is misleading; (b) that the act violates article 14, § 14 of the Constitution in that it purports to authorize the issuance of bonds based on an election open to persons other than property taxpayers.

It is provided in article 3, § 16, of the present Constitution that: "Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

The title of Act No. 80 of the Extra Session of 1921 reads as follows: "An Act authorizing municipal corporations (City of

New Orleans excepted), for the purpose of constructing, acquiring, extending or improving any revenue-producing public utility, *to issue bonds secured exclusively, principal and interest, by mortgage on the lands, buildings, machinery and equipment and by pledge of the income and revenues of such public utility;* and providing that such bonds shall not be a charge upon the other income and revenues of the municipality and shall not be included in computing the indebtedness of the municipality for the purpose of any constitutional limitation."

The title of the act and its provisions are based exclusively upon article 14, § 14 (m) of the Constitution of 1921, which declares that: "For the purpose of constructing, acquiring, extending or improving *any revenue-producing public utility,* the Legislature may authorize municipal corporations *to issue bonds secured exclusively, principal and interest, by mortgage on the lands, buildings, machinery and equipment and by pledge of the income and revenues of such public utility.* Such bonds shall not be a charge upon the other income and revenues of the municipality and shall not be included in computing the indebtedness of the municipality for the purpose of any limitation herein."

The title of the act is couched substantially in the language of the constitutional provision, and we fail to see that anything contained in either is misleading or vaguely expressed.

The Constitution plainly confers upon municipalities in the state *authority to issue bonds secured exclusively, by mortgage* on the lands, buildings, machinery, and equipment, *and by pledge* of the income and revenues of the public utility constructed, acquired, extended, or improved.

From the language of the constitutional provision, it is manifest that implied authority was conferred by the organic law upon the Legislature to provide for the enforcement of this mortgage and pledge by appropriate legislation, as these were the exclusive securities for the payment of the bond issue, and, without such provision, the bonds issued would be unsaleable and worthless, and Act No. 80 of the Extra Session of 1921 would become a dead letter upon the statute books of the state.

The provision in section 5 of Act No. 80, Extra Session of 1921, for the enforcement of the pledge and the foreclosure of the mortgage against the governing authority of a municipality by seizure and sale, as if proceeding against a private corporation, firm, association of persons, or individual, is therefore clearly a method and means of carrying into effect the main object and purpose of the act, and therefore may be omitted from its title. Edwards v. Police Jury, 39 La. Ann. 855, 2 So. 804; Excelsior P. & M. Co. v. Green, 39 La. Ann. 455, 1 So. 873; State v. Lahiff, 144 La. 362, 80 So. 590; Thornhill v. Wear, 131 La. 479, 59 So. 909.

The fact of such omission, therefore, does not render Act No. 80 of the Extra Session of 1921 unconstitutional, as contended by plaintiffs.

2. The second ground of attack is that Act No. 80 of the Extra Session of 1921 violates article 14, § 14, of the Constitution, as it authorizes the issuance of bonds based on an election open to persons other than property taxpayers.

Section 14 (a), (b), and (c) of article 14 of the present Constitution relate to bond issues to be paid out of *special taxes,* authorized by vote of a majority, in number and amount, *of the property taxpayers* qualified to vote under the Constitution and laws of this state, who vote at a special election held for that purpose.

As the bonds to be issued in this case are not to be paid out of a *special tax* to be voted at a special election held by property taxpayers, *but are to be secured exclusively by mortgage* on the lands, buildings, machinery, and equipment, *and by pledge* of the income and revenues of the public utility to be constructed, extended, and improved, it is clear that section 14 (a), (b), and (c) of article 14 of the Constitution are not applicable, but that section 14 (m) of article 14 applies to the case.

This court has expressly held that waterworks and electric light and power systems, *operating as one plant*, as contemplated in the case at bar, and serving both users of water and electric current, may be hypothecated under the Constitution of 1921, article 14, § 14 (m), and Act No. 80 of the Extra Session of 1921, to secure bonds for the betterment of either service or for both services indiscriminately. Gisclard v. City of Donaldsonville, 159 La. 738, 106 So. 287.

The bond issue in the Gisclard Case was authorized by a majority vote of the duly qualified resident electors of the municipality, at an election held as provided in Act No. 80 of the Extra Session of 1921.

■ 3. Able counsel for appellants contend that the Constitution and statutes do not authorize Morgan City to hypothecate an existing utility for the benefit of another separate and distinct utility, as it seeks to do in the present case. As authority for this contention, the case of Gisclard v. City of Donaldsonville, 159 La. 738, 106 So. 287, is cited.

The same contention was made in the case cited, but had no application there, as the City of Donaldsonville was operating its electric light and waterworks *as one plant*, serving both purposes. All of the machinery and equipment was under one roof and was operated by one and the same motive power.

As stated in the opinion: "But the fact is that what might be two separate and independent plants is only *one plant*. The reason is that it is cheaper to operate one plant than two plants for both services. One building, one set of engines, one crew of men, one overhead expense, one set of tools, one supply of fuel, lubricants, etc., takes the place of two. It would be not practicable for any small municipality, owning and operating a waterworks and electric light plant, to operate two plants, independently, as separate public utilities." Gisclard Case, page 741 of 159 La., 106 So. 287.

It is also stated in the opinion: "Usually —and perhaps in every city that owns and operates both the waterworks and the electric light and power system—there is only one plant operated as Donaldsonville operates hers. That is a matter of common knowledge, and of which the members of the constitutional convention who authorized this statute of 1921, and the members of the Legislature who enacted the law, were not ignorant. They knew that it would be not feasible to mortgage only the dynamo and electric light wires and poles, or only the water pumps and mains and laterals, belonging to a municipal waterworks and electric light plant. They knew that, in order to mortgage the machinery and equipment used for either the waterworks or the electric light service, it would be necessary to mortgage machinery employed in both services, for the improvement or extension of either service. Therefore, the authors of paragraph (m) of section 14 of article 14 of the Constitution, and the authors of the Act 80 of 1921, when they authorized the municipalities to mortgage the lands, buildings, machinery and equipment, and to pledge the income and revenues, of 'any revenue-producing pub-

lic utility,' to secure the payment of bonds to be issued for the purpose of constructing, acquiring, extending or improving 'such public utility,' intended that a waterworks and electric light plant, operated as Donaldsonville's plant is operated, *should be regarded as one public utility.* It is not important whether such a waterworks and electric light plant should be deemed one utility or two utilities, as an abstract idea. *It is one utility, within the meaning of the law on the subject; otherwise, the law would be futile.*" Gisclard Case, 741, 742 of 159 La., 106 So. 287, 288. (Italics ours.)

Morgan City owns only a waterworks plant and system. The electric light plant operated within the municipal limits belongs to private interests.

There is, therefore, no attempt being made in this case, on the part of the municipality, to hypothecate an existing utility for the benefit of another separate and distinct utility, as the mortgage, when executed, will rest upon a combined or single city plant, furnishing water and light and power to the inhabitants of Morgan City.

4. Section 4 of Act No. 80 of the Extra Session of 1921 provides that: "The governing authority of the municipality shall furnish the commissioners of election with a list of resident electors qualified to vote in the municipality, certified by the Registrar of Voters of the parish, and with ballots, tally sheets, blanks for making returns, and all paraphernalia necessary for properly holding the election."

A list of the registered voters within the municipal limits of Morgan City was furnished the municipal authorities by the registrar of voters, and was properly certified by her. The municipal authorities were also supplied with two poll tax lists for the years 1928 and 1929, showing the names of persons who had paid their poll taxes for the two years immediately preceding the election, which was held on July 8, 1930. These lists were furnished by the sheriff and ex officio tax collector of the parish of St. Mary, and were certified by that officer.

From the registration list and the two poll tax lists, the commissioners determined who were the qualified electors in the municipality, entitled to vote for or against the proposition submitted.

Plaintiffs contend that "the list of resident voters qualified to vote in the municipality" can only mean a list of bona fide residents of the city, who are of proper age, who have paid the required poll taxes, and who are duly registered. Plaintiffs' brief, p. 50.

We understand, from this statement, that plaintiffs' contention is that the list to be supplied by the registrar of voters must include all of the constitutional requirements of the elector as to residence, age, and poll tax payments. Plaintiffs also assert and insist *that the mere failure to furnish such list* strikes with nullity the election held in this case.

After the commissioners finished their work, the box was placed in the vault of the city hall, and on top of the box, which was sealed, were placed the registration list and the two poll lists, instead of being placed in the box. See Act No. 46 of 1921 (Ex. Sess.), § 21.

The ballot box, when opened after the polls closed, showed on count of ballots that there were 987 ballots in the box, and that the voters' list kept by the clerk of election contained the names of 969 as having voted. The result of the election, however, was not affected, the proponents of the election having lost 10 votes and the opponents 5 votes, the remaining 3 votes being duplicates.

A total of 600 votes had been cast in favor of, and 369 votes against the proposition, and even if 25 votes were found in the box unaccounted for, as contended by plaintiffs, the result of the election was not changed.

Section 3 of Act No. 80 of the Extra Session of 1921 provides that: "Commissioners shall be appointed and the election shall be held and the returns thereof made to the governing authority calling the election and the result promulgated, in so far as practicable, in the same manner as provided by law for elections to authorize the issue of bonds secured by special taxes."

It is provided in section 14 of Act No. 46 of the Extra Session of 1921 that: "No defect or irregularity in or omission from the list of voters furnished by the registrar of voters hereunder, *shall affect the validity of the election,* unless it be established that voters were thereby deprived *of votes sufficient in number and amount to have changed the result of the election.*"

Plaintiffs have charged neither fraud nor corruption in the conduct of the election in this case. Nor do plaintiffs make any pretense whatever that any defect or irregularity in or omission from the list of voters furnished by the registrar, or that any illegal votes cast, or that any irregularity of any kind deprived the voters of votes, sufficient in number to have changed the result. None of the irregularities complained of by plaintiffs, in the conduct of the election, was such as to prevent a free and honest expression of the will of the voters; and it is well settled that, where the electors have had a fair and free opportunity to express their will at the polls, and have done so, the result of their choice will not be set aside because of the failure of some ministerial officer to perform some duty imposed upon him by law, or in the manner prescribed for his guidance. Vidrine

v. Eldred, 153 La. 779, 96 So. 566; Andrews v. Blackman, 131 La. 355, 59 So. 769; Sylvestre, v. St. Landry Parish School Board, 164 La. 204, 113 So. 818.

■■■ 5. On the trial of the case, plaintiffs attempted to show, over the objections of defendant, that the plans of the proposed improvement, made by the consulting engineer employed by Morgan City, were inadequate and could not be built for the estimated cost, and also that the proposed improvement was unnecessary, the municipal waterworks system being adequate, and the city being properly served by the present privately owned electric plant.

The objections were sustained by the trial judge, and the effect of the testimony was limited to proof that the municipality intended to and would, in the final analysis, mortgage one distinct and separate utility, for the purpose of constructing or improving a separate and distinct public utility.

Plaintiffs have not alleged fraud, gross abuse of power, or oppression, or ultra vires.

The mayor and councilmen of Morgan City are acting within the power conferred upon them by Act No. 80 of the Extra Session of 1921, which was passed in pursuance of section 14 (m) of article 14 of the Constitution of 1921; and there being no fraud imputed or shown, no invasion of private rights, no manifest oppression, and no gross abuse of power, their action is not subject to judicial control. Brennan v. Sewerage & Water Board, 108 La. 569, 32 So. 563; Dupuy v. Police Jury of Parish of Iberville Parish, 115 La. 579, 39 So. 627; Murphy v. St. Mary Parish Police Jury, 118 La. 410, 42 So. 979; Parker v. City of Monroe, 128 La. 951, 55 So. 587; Bernard v. Bayou Portage Drainage District, 130 La. 637, 58 So. 493; Chiro v. Fourth Jefferson Drainage District, 159 La. 471, 105 So. 556; Henderson v. City of Shreveport, 160 La. 360, 107

So. 139; Anderson v. Thomas, Mayor, 166 La. 512, 117 So. 573.

In McQuillin Mun. Corp., vol. 1, § 390, p. 963 (2d Ed.), it is said: "Sec. 390—Judiciary will not control the exercise of discretionary powers.

"Assuming that the municipal authorities have acted within the orbit of their lawful authority, no principle of law is better established than that courts will not sit in review of proceedings of municipal officers and departments, especially those involving legislative discretion, in the absence of bad faith, fraud, arbitrary action, or abuse of power. Thus where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. * * * *"

The ruling of the trial judge is correct and is approved.

It is therefore ordered that the judgment in each of the consolidated cases be affirmed at the cost of appellants in each of these cases.