148 So. 248

## HILL v. DE SOTO PARISH SCHOOL BOARD.

### No. 31495.

May 1, 1933.

Newman & Jones, of Leesville, for appellant.

A. B. Cavanaugh, Dist. Atty., of Leesville, for appellee.

ODOM, Justice.

This is a suit to enjoin the parish school board of De Soto parish from consolidating the Benson and Pelican High Schools. Plaintiff's demands were rejected by the lower court, and he prosecutes this appeal.

1. Plaintiff has not prosecuted his appeal. He has filed no brief, nor has he sent counsel to argue the case orally. We might dispose of the case by following the well recognized and established rule that, in cases where an appellant fails to point out errors in the judgment appealed from, this court will assume that it is correct and af-

firm it, in case there are no errors patent on the face of the record. It is not the duty of appellate courts to search records in order to find errors not suggested or pointed out by appellants. An appellant should do more than perfect his appeal. He should follow it up and assist the court in its labors to correct the mistakes and errors, if any, made by the trial court. Otherwise he is entitled to scant consideration of the case on appeal. Kaplan State Bank v. Farmers' Supply Co., et al., 174 La. 76, 139 So. 763; Bynum v. Lieber, 155 La. 760, 99 So. 590; Schwan v. Peterman, 123 La. 732, 49 So. 486; Barber Asphalt Co. v. Ry. Co., 49 La. Ann. 1608, 22 So. 955; Freyhan v. Berry, 49 La. Ann. 306, 21 So. 911; Guy and Richardson v. McDuffie, 123 La. 641, 49 So. 222; Arkadelphia Milling Co. v. Anders, 5 La. App. 193; Walker v. Currie, 6 La. App. 647; Blasdel v. McElroy, 7 La. App. 109; Louisiana Red Cypress Co. v. Kennedy et al., 10 La. App. 177, 120 So. 708; Stephenson & Hand v. Shreveport Natatorium, 13 La. App. 150, 127 So. 427.

2. The appeal is without merit and would be disposed of under the rule above stated but for the fact that the issue involved may be of interest to the public.

The facts are that in 1918 the school board of De-Soto parish, at the request of the taxpayers, created a special school district known as the "Benson school district" with the parish board as the governing authority. An election was called to vote bonds, the proceeds to be used for the "construction of a public school building at Benson, La." The election was carried in favor of the bond issue, the bonds were sold, and the building erected. The taxpayers understood that, if

the tax was voted and a suitable building was erected, a high school would be established at Benson by the school board. The building was erected and the high school established in accordance with the wishes and understanding of all concerned. The Benson school district did not then, nor did it later, vote a tax to maintain the school. That high school, like the other thirteen in the parish, was maintained by a parish-wide maintenance tax.

At the time this high school was established, the assessed valuation of all property in De Soto parish was approximately $25,000,000. On that valuation, the general maintenance tax was sufficient to support all the fourteen high schools of the parish, and all the fourteen were maintained until 1931. But, due to conditions with which all are familiar, the assessed valuation of the property of the parish has decreased to about $16,000,000.

So, in 1931, the school board, due to lack of revenue, found itself utterly unable to maintain all the fourteen high schools in the parish, and sought the advice of the state board of education as to the proper course to pursue. It invited the state board to make a survey of the parish and to give its advice touching the feasibility of consolidating some of the high schools in order to save expenses.

The parish board made it clear to the state board that it desired to maintain the efficiency of its public school system if possible. The state board, in compliance with the request, sent a committee of three, headed by Mr. Trudeau, supervisor of rural schools, to De Soto parish to make the survey and to report its findings.

The committee made its report, in which it is stated:

"The entire week beginning Monday, June 8, was devoted to a thorough and careful study of the school conditions prevailing in the Parish of De Soto. Among the many features of the school system studied, looking toward consolidation, the following were given most thoughtful consideration:

"a. Condition of roads leading to and from the various high school centers.

"b. Distances to be traveled.

"c. Transportation facilities.

"d. Adequacy of school plants and equipment.

"e. School population served at each high school center and in surrounding territory.

"f. Logical school centers for consolidation viewed from an economical and educational standpoint.

"g. Number of teachers employed at all presently existing high school centers, and number possible to eliminate at points where high school departments might be discontinued.

"h. Approximate number of high school pupils to be transferred and the most economical system to be employed in transporting them.

"i. Number of transfers operated under the present system, and the approximate number to be operated under the new plan of consolidation to be evolved.

"j. Cost of operating the present system as an aid in formulating an effective plan which might be successfully financed even out of revenues no greater than those presently anticipated.

"k. The direct financial benefits accruing to the elementary schools as a result of consolidating some of the high school departments."

The report further sets out that an economic emergency existed in the parish which made it necessary and imperative that the entire school system be reorganized in order that the schools might run full time "and yet keep within the budget of presently anticipated revenues." It was pointed out that the establishment of too many small high schools in the parish had resulted in raising the cost of high school instruction to a point "beyond the ability of the parish to finance," and further that "the improved road conditions of the parish today make transportation much easier than formerly, hence the practicability of consolidation."

The committee pointed out numerous reasons, aside from the question of finances, why it would be to the best interest of the public generally to consolidate the high schools. The members of the committee were of the opinion that, if its recommendations be carried out, the parish board could operate its schools within a budget based on present revenues without crippling the efficiency of the general system. It was especially recommended that the fourteen high schools be consolidated into seven, and that the Benson and Wallace schools be consolidated with Pelican.

The parish board approved the recommendations of the state board through its committee. It did not, however, contemplate

the closing of the school at Benson. A grammar school was to be maintained in the building there, and only the high school pupils were to be carried to the Pelican school, transportation to be furnished at the board's expense.

By the present suit, plaintiff seeks to prevent the proposed consolidation. His suit has no merit in law. Nor is it supported by considerations of public policy and the common good of the inhabitants of the district.

Under article 12 of the Constitution, section 1, free public schools are part of the educational system of the state. In section 10 of that article it is provided that "The Legislature shall provide for the creation and election of parish school boards which shall elect parish superintendents for their respective parishes." Pursuant to this mandate, the Legislature of 1922, by Act No. 100, § 17, created a parish school board for each of the parishes of the state and constituted them bodies corporate in law with full power and authority to make rules and regulations for their own government not inconsistent with the rules and regulations of the state board of education. These boards are public corporations and are created for the purpose of administering for the state the public school affairs of their respective parishes. Their functions are purely of a public character. In matters relating to the free public schools of their parishes, they are the governing authorities not only for the parish as a whole, but for each and all such school districts as may be created. They are state agencies, a part of the state government. To them, the state has delegated very broad discretionary powers, such as the establishment of such

public schools as they may deem necessary to provide adequate school facilities for the children of the parish, to determine the number of schools to be opened, the location of the schoolhouses, the number of teachers to be employed, and to fix their salaries.

Section 20 of Act No. 100 of 1922, as amended by Act No. 110 of 1928, provides that:

"The parish school board shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed," etc.

Section 21 of that act provides that:

"The parish school board shall have authority to establish such public schools as it may deem necessary to provide adequate school facilities for the children of the parish. * * * Central or high schools may be established when necessary, but no high school shall be established without the sanction of the State Board of Education."

█ The establishment and location of high schools is left entirely to the discretion of the parish boards, subject to such limitations as may be prescribed by the state board. The discretionary powers vested by law in these boards as public bodies, as state agencies, will not be interfered with by the courts unless exercised in a manifestly arbitrary, unreasonable, or fraudulent manner. Chiro. v. Fourth Jefferson Drainage District, 150 La. 471, 105 So. 556, and case cited.

█ The school board did not abuse its discretion in this case. On the contrary, its action was prompted, and we may say compelled, by an emergency over which it had no control. Not only that, but it very clearly appears that the children of high school

age in the Benson district will be afforded as good, if not better, educational advantages after the consolidation as they had before, and at no additional expense.

The judgment is affirmed, at appellant's costs.