360 So.2d 863 (1978)
BOARD OF COMMISSIONERS OF LOUISIANA MUNICIPAL POWER COMMISSION (LAMPCO)
v.
ALL TAXPAYERS PROPERTY OWNERS, AND CITIZENS of the State of Louisiana (including particularly the Citizens of the Municipalities of Franklin Morgan City, Natchitoches and Opelousas, the Creators of the Louisiana Muncipal Power Commission) and Non-Residents Owning Property or Subject to Taxation therein, and all other Persons Interested in or Affected in any way by the Issuance of Electric Revenue Bonds of the Louisiana Municipal power Commission.
Nos. 61586, 61622.
Supreme Court of Louisiana.
June 19, 1978.
Rehearings Denied July 26, 1978.
*864 Daniel T. Murchison, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, Salvador L. Diesi, Richard B. Millspaugh, Opelousas, Harold B. Judell, William H. Beck, Jr., Foley, Judell, Beck, Bewley & Martin, John W. Cox, Cox, Osborne & Michaelis, Michael R. Fontham, Paul L. Zimmering, Ewell P. Walther, Jr., Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, Harmon F. Roy, Mouton, Roy, Carmouche, Bivins & Hill, Lafayette, for plaintiff-applicant.
Alfred S. Lippman, Nicholas F. Larocca, Jr., Lippman, Mahfouz & Martin, Morgan City, Jack C. Caldwell, James R. McClelland, Aycock, Horne, Caldwell, Coleman & Duncan, Franklin, for defendants-respondents.
Harmon F. Roy, Mouton, Roy, Carmouche, Bivins & Hill, Lafayette, for amici curiae for City of Lafayette.
Kermit M. Simmons, Simmons & Derr, Winnfield, C. Jack Pearce, Wallace E. Brand, Pearce & Brand, Washington, D.C., for amici curiae for Cities of Winnfield, Vidalia and Jonesboro.
Eddie N. Pullaro, Pullaro & Daigle, Houma, Hale M. Walker, Walker, Holstead & Smith, Ruston, for amici curiae City of Ruston and the Bd. of Commissioners of Electric Power Systems Authority.
CALOGERO, Justice.
We granted writs in this case upon application of plaintiff, Board of Commissioners of Louisiana Municipal Power Commission [hereinafter referred to simply as LAMPCO].[1]
LAMPCO, a joint commission and agency/instrumentality of four Louisiana cities is a corporate political subdivision of the State of Louisiana created by virtue of an intergovernmental agreement among the governing bodies of Morgan City, Franklin, Opelousas and Natchitoches, and under the authority of R.S. 33:1321-1337, sometimes known as the local services law.[2] LAMPCO proposes to raise $90,000,000 by issuing revenue bonds under R.S. 33:1321-1337, the proceeds to be used to construct a type of electric generating plant referred to as a "115 MW synthesis-gas combined cycle" power plant. LAMPCO brought this action under R.S. 13:5121-5130 to obtain judicial validation of the bonds and certain power sales contracts. The power sales contracts entered by LAMPCO and each of the four cities are a primary source of security for the bonds.
The district court declared, favorably to petitioner LAMPCO, that the bonds were *865 valid and would be legally binding obligations of LAMPCO, and that the power sales contracts were valid and binding obligations of LAMPCO and the four cities. Reversing the district court, the Court of Appeal dismissed plaintiff's petition holding that the power sales contracts and the proposed bonds were null and void because not authorized by the statute upon which plaintiff and the cities were relying and because violative of the Louisiana Constitution. 355 So.2d 578 (La.App. 3rd Cir. 1978). We granted LAMPCO's application for writ of review to examine the correctness of these holdings. 356 So.2d 1002 (La.1978).
Each of the four member cities engages in the generation of electricity. The power plants are part of the respective utility systems operated by each of the cities. Natural gas or oil is the energy source for each of the generating plants. Because these fuels are subject to critical supply problems including diminishing reserves, the cities' electric utilities were threatened with curtailment of available supply and significant price escalations. A foreseen solution was the construction of a new type of generating plant which employs an alternate fuel. Feasibility studies confirmed that the new type of electric generating plant, the 115 MW synthesis-gas combined cycle power plant, would be a practical and workable solution to the problems of these cities and their respective electric utilities. Cost factors dictated a "joint action power program" such as that here undertaken.
The legal facility for this joint action power program was the 1975 statutory addition and amendments to R.S. 33:1321-1337 which was apparently specifically passed to authorize just such a program. Under these statutes municipalities (or parishes) concluding an agreement under its provisions may by resolutions of their respective governing bodies create a joint commission as an agency and instrumentality of the municipal governing bodies. R.S. 33:1332. The commission so created is by law "a body corporate" (R.S. 33:1332) and a political subdivision of the State of Louisiana (R.S. 33:1334(D)) with, among other rights, powers and authority, the power to issue revenue bonds to finance the cost of the construction, acquisition or improvement of public projects, "including electric utility services." R.S. 33:1334(A).
These revenue bonds are payable, "solely from the revenues derived from the operation of the public project constructed or acquired with the proceeds of such revenue bonds." R.S. 33:1334(A). Revised Statute 33:1334(C) provides that a municipality or parish "shall not in any event be liable for the payment of the principal or interest on any revenue bonds of the commission except as provided" in the statute. [R.S. 33:1334(A) authorizes the municipality to be an obligor on the bonds, with the bonds payable, as earlier mentioned, solely from revenues derived from operation of this public project.] Revised Statute 33:1334(C) goes on to provide that "in addition, the municipalities or the parishes may contract for services furnished by any joint facility constructed by the commission and the municipalities and parishes may obligate themselves to make payments for such term not exceeding forty years, and in such manner as may be provided in such contracts. . . ." Revised Statute 33:1334(C) concludes: "None of the bonds of the commission shall be construed to constitute an indebtedness of the municipality or parish for debt limit or other purposes within the meaning of any constitutional or statutory provisions whatsoever." R.S. 33:1334(C). These revenue bonds "may be issued without the necessity of securing the approval of the electorate at a referendum." R.S. 33:1336.
Finally, for our present discussion in any event, R.S. 33:1337 provides that "these provisions shall be liberally construed, to the end that, through the use of arrangements and agreements provided for herein between one or more municipalities and/or joint commissions and/or one or more electric public utility companies greater economy and efficiency in the providing of electrical and energy services to the citizens may be achieved; and further to this end, the governing authority of the municipality and/or joint commission . . . shall be empowered to adopt such other ordinances *866 and resolutions, take such other actions and charge and collect such fees as may be contemplated or necessary by the said Contract. . . ." R.S. 33:1337.
Constitutional provisions bearing on the case include Article 6, section 37(A) of the Louisiana Constitution by which the legislature is allowed to "authorize political subdivisions to issue bonds or other debt obligations to construct, acquire, extend or improve any revenue producing public utility or work of public improvement." That section goes on to provide that "bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery and equipment or by the pledge of the income and revenues of the public utility or work of public improvement." However, the section announces that "[t]hey shall not be a charge upon the other income and revenues of the political subdivision." [emphasis provided]
Peripherally pertinent to the issues in this case is Article 6, section 33 of Louisiana Constitution which provides that "general obligation bonds may be issued only after authorization by a majority of the electors voting on the proposition at an election in the political subdivision issuing the bonds."
Construing the pertinent statutory provisions in conjunction with the applicable constitutional articles we believe that it is evident that Revised Statute 33:1321-37 is constitutional. Under the statute the authorized revenue bonds are not a charge upon other income and revenues of the political subdivisions. In fact they are "payable. . . solely from the revenues derived from the operation of the public project." Article 6, section 37(A) is thus not offended. Similarly, the provision of the statute which says that the bonds may be issued without the necessity of securing the approval of the electorate at a referendum does not offend Article 6, section 33's requirement that general obligation bonds be issued only after authorization by a majority of the electors, for the reason that the revenue bonds are not general obligation bonds.
It was apparently for these reasons that the Court of Appeal did not find unconstitutional any of the provisions of R.S. 33:1321-37. Rather, the Court of Appeal found the power sales contracts and the proposed bonds null and void as 1) not authorized by the statute purportedly authorizing them (R.S. 33:1321-37), and 2) in violation of Louisiana Constitution, Article 6, section 37(A) because the bonds purportedly represent a charge upon other income and revenues of the four cities.
Before considering the propriety of these resolutions of the legal issues by the Court of Appeal we choose to restate some of the specifics concerning LAMPCO's proposed bond issue and the provisions of the power sales contracts here under attack.
In essence the agent/instrumentality of the four cities, namely LAMPCO, is committed to build a $90,000,000 electric generating plant for the benefit and advantage of the four member cities and their respective electric utility systems. When the plant is completed and producing energy, each of the cities will have a proportionate call on energy produced, that is, each city will be entitled to purchase a percentage of the project's capability. Each city will be entitled to purchase power and also will be compelled to do so under a "take or pay" contract, although it is contemplated that unneeded capacity will be sold to outsiders or adjusted between the cities. Additionally, the Court of Appeal described the arrangement in the following way, with reference to plaintiff's exhibits:
The intergovernmental agreement provides that the cities' percentages of energy can be adjusted, if one city needs less and another desires more. (P-1). Each city will continue to operate its own electric utility system, which will later be coordinated with LAMPCO's system. It is "expected" that the energy generated by LAMPCO during its first years of operation will be in excess of the four cities' needs, and LAMPCO is to sell any surplus. (P-7), pg. 14). The payments by the cities are termed "monthly power *867 costs" (P-7, pg. 10). These can include maintenance, renewal or replacement of the facility, debt service, all costs of production and any uninsured liability for damages. In addition to the monthly power costs, each city is to pay a ten per cent surcharge. (P-6, pg. 26). LAMPCO will submit a monthly statement to each of the cities, and is to prepare an annual budget of the estimated monthly power costs. The budget is to be reviewed at the end of each quarter and revised if necessary. The four identical contracts each state:
"The obligations of the City to make the payments required . . . payable as an operating expense of its combined municipal utility system, payable solely from the revenues and receipts of such combined municipal utility system . . . shall be made whether or not the project has been completed, is then operable or is operating, and . . . shall not be conditioned upon the performance or nonperformance by LAMPCO. . . ." (P-7, pg. 11).
and
". . . non-delivery of Project power and energy on account of Uncontrollable Forces or for any reason shall not relieve the City from its obligation to make its payment required. . . ." (P-7, pg. 13). 355 So.2d at 580.
The Court of Appeal determined that, to the extent LAMPCO revenues securing the bonds will include receipts from the power sales contracts, such revenues will not be derived solely from the operation of the public project. Instead, the bonds will in effect be paid with income from the utility systems of the respective cities. It was for this reason that the Court of Appeal found the arrangement at issue here to violate that part of R.S. 33:1334(A) which provides that bonds are "payable . . . solely from the revenues derived from the operation of the public project constructed."
We believe that this construction of the language of R.S. 33:1334(A) is much too narrow in light of the overall import of the statute and the specific provision of R.S. 33:1337. That section requires that the act's provisions be "liberally construed, to the end that, through the use of arrangements and agreements provided for herein between one or more municipalities and/or joint commissions, and/or one or more electric public utility companies, greater economy and efficiency in the providing of electric and energy services to the citizens may be achieved." Further, the same section empowers the cities and the joint commission "to adopt such other ordinances and resolutions, take such other actions and charge and collect such fees as may be contemplated or necessary by the said Contract, all for the purpose intended."
In light of R.S. 33:1337 and other provisions of the statute, we conclude that "revenues derived from the operation of the public project" (R.S. 33:1334(A)) is intended to mean all LAMPCO revenues, including those to be derived from the power sales contracts between LAMPCO and the four cities, contracts which are authorized by R.S. 33:1334(C).[3] Contrary to defendants' position we believe that the specific power sales contracts and the provisions thereof obliging payment irrespective of completion of the project or ultimate delivery of project power are authorized by R.S. 33:1334(C). Construing that subsection with R.S. 33:1337's provision as to liberal construction and the purposes of the statute, it is evident that the contract for service contemplated by R.S. 33:1334(C) includes one under the terms of which LAMPCO, the agent/instrumentality of the four member cities, obliges itself to construct a $90,000,000 plant and, assuming successful completion thereof, to furnish *868 electric power in accordance with the terms of the agreement. [4] We likewise find erroneous the Court of Appeal's finding that the power sales contracts and the proposed bonds violate Article 6, section 37(A) of the Louisiana Constitution of 1974. That constitutional provision says in effect that bonds issued in connection with revenue producing utilities "shall not be a charge upon the other income and revenues of the political subdivisions." This provision quite obviously means that the bonds shall not be a charge upon the income and revenues of the political subdivision other than utility revenues, inasmuch as that section in its preceding sentence specifically provides that the bonds may be secured by "the income and revenues of the public utility."
The Court of Appeal was no doubt influenced by its concern for the overall effect upon the cities' general revenue picture by virtue of committing for bond payments all utility revenues when, historically, net utility revenues have been transferred to the general funds of the cities. That concern may indeed be legitimate. Nonetheless as an appropriate policy determination it is properly the concern of the governing bodies of the cities, rather than the courts.
The Court of Appeal found, erroneously in our view, that the power sales contracts "constitute a debt which can be enforced by a judgment against a member city's entire revenues and assets," and that the cities have an unconditional obligation to pay the monthly power costs and surcharges provided in the power sales contracts. This is simply not so. While there is an obligation to pay whether or not the project has been completed and project power and energy furnished, that obligation or debt is payable only from the revenues and receipts of the respective combined municipal utility systems of the four cities. See Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969); McCann v. Mayor of Morgan City, 173 La. 1063,139 So. 481 (1932). It is not payable from the member cities' entire revenues and assets, although conceivably customers of the utility may be exposed to increased charges, in the event the project fares worse than the feasibility studies suggest. Nonetheless, the general or "other income and revenues of the political subdivision" (La.Const. art. 6, § 37(A)) can in no way be charged or burdened with payment of the revenue bonds at issue. Similarly, possible loss to the cities' general funds of net utility revenues, while perhaps affecting solvency (or indirectly requiring generation of additional general income or revenues), does not convert a charge against utility revenues to a charge against other income and revenues. The power sales contracts and the proposed bonds do not violate Article 6, § 37(A) of Louisiana Constitution of 1974.
We thus conclude that the power sales contracts and the proposed bonds are authorized by R.S. 33:1321-1337, in particular 33:1334(A) and (C), and do not violate Article 6, § 37(A) of the Louisiana Constitution of 1974.

Decree
The judgment of the Court of Appeal is reversed; the judgment of the district court declaring the bonds and power sales contracts valid and legally binding is ordered reinstated. All costs of these proceedings are to be assessed against Louisiana Municipal Power Commission.
COURT OF APPEAL JUDGMENT REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
MARCUS, J., dissents and assigns reasons.

APPENDIX
La.Const. art. VI, § 33, Political Subdivisions; General Obligation Bonds
Section 33. (A) Authorization. Subject to approval by the State Bond Commission or its successor, general obligation bonds may be issued only after authorization by a majority of *869 the electors voting on the proposition at an election in the political subdivision issuing the bonds. Bonds to refund outstanding indebtedness at the same or at a lower effective rate of interest, even though payable solely from ad valorem taxes, need not be authorized at an election if the indebtedness refunded is paid or cancelled at the time of the delivery of the refunding bonds, or if money, or securities made eligible for such purpose by law, are deposited in escrow in an adequate amount, with interest, to be utilized solely to retire the refunded indebtedness or bonds and to pay interest thereon and redemption premiums, if any, to the time of retirement. [emphasis provided here and elsewhere]
La.Const. art. VI, § 37: Revenue-Producing Property
Section 37. (A) Authorization. The legislature by law may authorize political subdivisions to issue bonds or other debt obligations to construct, acquire, extend, or improve any revenue-producing public utility or work of public improvement. The bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery, and equipment or by the pledge of the income and revenues of the public utility or work of public improvement.They shall not be a charge upon the other income and revenues of the political subdivision. R.S. 33:1324: Grant of authority to parishes, municipalities, police juries, harbor districts and terminal districts to act jointly

Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
* * * * * *
(2) Public utility services, such as water, electricity, gas, roads, bridges, causeways, tunnels, ferries and other highway facilities, and public transportation.
R.S. 33:1331: Financing agreements
Agreements concluded under R.S. 33:1324 and all written agreements concluded under R.S. 33:1325 shall include a statement of the financial obligations of each of the parties to the agreement. Any parish or municipality may appropriate such sums, issue its bonds, as defined in R.S. 33:1321, or levy any special taxes, except income taxes, in the manner provided by law, for any public project or improvement, as defined in R.S. 33:1324(4), to raise such sums as are necessary to fulfill its obligations under the terms of any agreements authorized by this part, including its obligations incurred in connection with the issuance of its bonds or other obligations issued under the authority of this part, and may charge and collect such fees, fares and tolls as are contemplated in said agreements. In furtherance hereof, each such municipality, parish or political special taxes, except income taxes, as are not prohibited by the constitution of the state in effect at the time of such tax levy, including, but not limited to, ad valorem, license or excise taxes. Such taxes shall be for the sole purpose of enabling the municipality, parish or political subdivision to meet its financial obligations under the agreements entered into pursuant to Section 1325. No tax authorized herein shall be levied or increased until authorized by a majority of the electors of each municipality or parish affected thereby who vote thereon in an election held for that purpose.
R.S. 33:1332: Administration of agreements; joint commission

Any parishes or municipalities concluding an agreement under the provisions of this Part may create by resolutions duly adopted by the governing bodies thereof a joint commission as an agency and instrumentality of such parishes or municipalities to administer the terms of such agreement. The members of such commission shall be appointed by the respective participating parishes or municipalities, and shall receive such compensation for services performed by virtue of such appointment as shall be provided in such agreement, but any member of such commission who is also an officer or employee of a parish or municipality concluding such agreement shall also receive the compensation to which he is otherwise entitled as such officer or employee. Each such commission shall be a body corporate under such corporate name and style as shall be provided in such agreement, shall have power to sue and be sued and shall continue in existence until all bonds, including refunding bonds, issued by such commission or any of such parishes or municipalities pursuant to such agreements have been finally paid and discharged. Each such commission shall have such powers relative to the construction, acquisition, improvement, operation and management of any public project or improvement, as shall be provided in such agreement, and shall have power, if provided in such agreement to issue in its corporate name, but for and on behalf of such parishes or municipalities, any bonds to finance the cost of the construction or acquisition or improvement of such public projects or improvements, which bonds may be the joint obligation, several obligations, or joint and several obligations of such parishes or municipalities.

*870 No such agreement shall have the effect of providing for a donation, in whole or in part, of the public funds or services of one parish or municipality for the benefit of another.
R.S. 33:1334: Issuance of revenue bonds by commissions; prescriptive period
A. Any joint commission created by any parishes or municipalities as an agency and instrumentality of such parishes and municipalities under the provisions of this Part shall have the power, if provided in the agreement entered into between such parishes and municipalities, to issue in its corporate name, any revenue bonds of such commission to finance the cost of the construction or acquisition or improvement of such public projects or improvements, including but not limited to, the public purposes described in R.S. 33:1324, which bonds may be the joint obligation, several obligations, or joint and several obligations of such parishes and municipalities, payable, however, solely from the revenues derived from the operation of the public project constructed or acquired with the proceeds of such revenue bonds. Title to such project shall vest in the parties to said agreement in the proportion or manner set forth in such agreement. Notwithstanding any other provision of Louisiana law relative to the right of partition available to owners of property or portions of property, the right of partition shall not be available to any party with respect to any property acquired or held subject to the terms of said agreement; however, the agreement may provide for the sale, lease, or other disposition of such property on such terms and conditions as may be set forth in the agreement.
B. Said bonds may be issued by the commission substantially in compliance with the procedures established by Subpart C, Part 1, Chapter 10, Title 33 of the Louisiana Revised Statutes of 1950 but without the necessity of securing the approval of the electorate at a referendum. Any contracts for construction or for acquisition of materials and supplies payable from the proceeds of such bonds shall be subject to the public contract law of the state of Louisiana (R.S. 38:2211, et seq.).
C. The municipality or the parish shall not in any event be liable for the payment of the principal or interest on any revenue bonds of the commission except as provided in Subsection A of this Section and, in addition, the municipalities or the parishes may contract for services furnished by any joint facility constructed by the commission and the municipalities and parishes may obligate themselves to make payments for such term, not exceeding forty years, and in such manner as may be provided in such contracts. None of the bonds of the commission shall be construed to constitute an indebtedness of the municipality or parish for debt limit or other purposes within the meaning of any constitutional or statutory provisions whatsoever.
D. The commission is hereby declared to be performing a public function and to be a body politic and political subdivision of the state of Louisiana as defined in Article VI, Section 44 of the Louisiana Constitution, with all rights, powers, and authority granted to political subdivisions of the state under the constitution and general laws of the state, including, without limitation, the provisions of R.S. 31:149. Accordingly, the commission and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana. Also, for purposes of R.S. 51:704(2), and any amendment thereto or substitution therefor, bonds issued by the commission shall be determined to be securities issued by a political subdivision of the state of Louisiana, provided, however, that nothing in Subsection D shall be construed as altering jurisprudentially established rules governing the responsibilities of a municipal corporation when engaged in the operation of a public utility.
E. Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by the commission shall be published at least once in a newspaper of general circulation published within the area of the municipalities or parishes creating the commission or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof, including security, for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation has been complied with. No court shall have authority to inquire into any of these matters after said thirty days.
F. Nothing in this Chapter shall grant to any joint commission the right to expropriate transmission or distribution facilities of any existing public utility; provided, however, that this shall in no way alter, affect or restrict the rights of expropriation or eminent domain of any individual parish or municipality which participates in the creation of any such commission.
G. Nothing in this Chapter shall be construed to grant an immunity to or on behalf of any public instrumentality created under this Act from any antitrust laws of the state or of the United States.
H. The books, records and proceedings of joint commissions shall be subject to the Public Records Act, provided, however, that a joint commission may agree that its records, writings, contracts or memoranda relating to new industrial or technological processes, developments, *871 inventions or discoveries for which patents or copyrights have been applied or obtained either by itself or by others in connection with a project of such commission shall remain confidential and not be subject to the public disclosure.
R.S. 33:1335: Energy Resource Contracts
Any municipality and/or joint commission created under this Part is hereby authorized to engage with one or more electric public utility companies as defined in R.S. 45:121, in the financing, construction, maintenance, and operation of joint electric power generation and transmission facilities as owners or otherwise. All arrangements and agreements made under the authority of this Section shall be reduced to writing, shall include, among other provisions, the proportionate share of the cost to be borne by the municipality and/or joint commission, and the proportionate share or quantity of the electric power to be acquired by the municipality and/or joint commission. Contracts authorized under this Section are hereinafter referred to as "Energy Resource Contracts" or "Contract" and are authorized for the object and purpose of providing for the efficient and economical operation of electric power services. Title to facilities acquired under a Contract shall vest in the parties to the Energy Resource Contract in the proportion or manner set forth in such Contract. Facilities or interest in facilities acquired by municipality and/or joint commission under the provisions of an Energy Resource Contract shall be acquired in strict compliance with the public contract law of the state of Louisiana (R.S. 38:2211, et seq.). Energy Resource Contracts shall be subject to the approval of the State Bond Commission, and shall have a term not exceeding forty (40) years, except as approved by the State Bond Commission. Energy Resource Contracts entered into under the authority of this Section are declared to be for a public purpose for the economic production and conservation of electric power and energy in the protection of the public health, welfare and safety. Notwithstanding any other provisions of Louisiana law relative to the right of partition available to owners of property or portions of property, the right of partition shall not be available to any party with respect to any property acquired or held subject to the terms of an Energy Resource Contract: however, an Energy Resource Contract may provide for the sale, lease, or other disposition of property subject thereto on such terms and conditions as may be set forth in the Contract. None of the property or facilities jointly owned, acquired or held, or property and facilities of a participant covered by a Contract shall be subject to expropriation by another party to any Energy Resource Contract entered into hereunder. A municipality and/or a joint commission may become parties to an Energy Resource Contract hereunder by the authority of an ordinance adopted by the governing body of the municipality and/or joint commission in the same manner as are other proceedings of such governing body or bodies. Notice of intention to adopt said ordinance shall be given by the governing body of the municipality and/or joint commission, and shall be published one time in the official journal of the municipality and/or joint commission at least seven days prior to the adoption of the ordinance or resolution.
R.S. 33:1336: Financing agreements

Any municipality and/or joint commission entering into a Contract pursuant to the provisions of R.S. 33:1335 may appropriate such sums as are necessary to fulfill its obligations under the terms of such Contract, and may incur debt and issue revenue bonds for the purpose of providing the municipality and/or joint commission's share of the cost of the construction and acquisition of the joint electric power generation and transmission facilities authorized under the provisions of R.S. 33:1335. Said bonds may be issued by any municipality and/or joint commission substantially in compliance with the procedures established by Subpart C, Part 1, Chapter 10, Title 33 of the Louisiana Revised Statutes of 1950, but as to a joint commission created and acting pursuant to the authority of R.S. 33:1334, such bonds may be issued without the necessity of securing the approval of the electorate at a referendum. All properties or interest in properties at any time owned by a municipality and/or joint commission, and all bonds issued by a municipality and/or joint commission under the authority of this Section and the income therefrom shall be exempt from all taxation in the state of Louisiana. Also, for the purpose of R.S. 51:702(2) and any amendment thereto or substitution therefor, bonds issued by a municipality and/or joint commission hereunder shall be determined to be securities issued by a public instrumentality of a political subdivision of the state of Louisiana. The provisions of R.S. 33:1334(E) shall be applicable to bonds issued under this Section.
R.S. 33:1337: Liberal construction

These provisions shall be liberally construed, to the end that, through the use of arrangements and agreements provided for herein between one or more municipalities and/or joint commissions, and/or one or more electric public utility companies, greater economy and efficiency in the providing of electrical and energy services to the citizens may be achieved; and further to this end, the governing authority of the municipality and/or joint commission entering into an Energy Resource Contract as authorized by R.S. 33:1335 shall be empowered to adopt such other ordinances and resolutions, take such other actions and charge and collect such fees as may be contemplated or necessary by the said Contract, all for the purpose intended and in accordance with the authority of Article VII, Section 14(C) of the Constitution of 1974.
*872 MARCUS, Justice (dissenting).
Under the terms of the power sales contracts entered into by LAMPCO and each of the four member cities, "[t]he obligations of the [c]ity to make the payments required. . . payable as an operating expense of its combined municipal utility system, payable solely from the revenues and receipts of such combined municipal utility system . . . shall be made whether or not the project has been completed, is then operable or is operating, and . . . shall not be conditioned upon the performance or nonperformance by LAMPCO . ." and ". . . non-delivery of Project power and energy on account of Uncontrollable Forces or for any other reason shall not relieve the [c]ity from its obligation to make its payments required. . . ."
The issue presented is whether the power sales contracts and the proposed bonds are authorized by law.
La.R.S. 33:1334 A provides in pertinent part:
Any joint commission created by any parishes or municipalities as an agency and instrumentality of such parishes and municipalities under the provisions of this Part shall have the power, if provided in the agreement entered into between such parishes and municipalities, to issue in its corporate name, any revenue bonds of such commission to finance the cost of the construction or acquisition or improvement of such public, projects or improvements, including but not limited to, the public purposes described in R.S. 33:1324, which bonds may be the joint obligation, several obligations, or joint and several obligations of such parishes and municipalities, payable, however, solely from the revenues derived from the operation of the public project constructed or acquired with the proceeds of such revenue bonds. . . . (Emphasis added.)
Clearly, the bonds issued by LAMPCO for the construction of a 115 MW synthesis-gas combined cycle power plant (type of electric generating plant) are not payable solely from the "revenues derived from the operation of the public project constructed or acquired with the proceeds of such revenue bonds." Rather, they are payable from the combined municipal utility system of each member city and must be paid regardless of whether the proposed project is completed and operable and whether or not power is delivered. Hence, I do not consider that the power sales contracts and the proposed bonds are authorized by La.R.S. 33:1334 A.
Moreover, La.Const. art. VI, § 37(A) provides that the legislature by law may authorize political subdivisions to issue bonds to construct, acquire, extend or improve any revenue-producing public utility which bonds may be secured, inter alia, "by the pledge of the income and revenues of the public utility" and which "shall not be a charge upon the other income and revenues of the political subdivision." Since the proposed bonds issued by LAMPCO are payable from the revenues and receipts of each city's combined municipal utility system and are not payable solely from the income and revenues of the electric public utility, they constitute a charge upon the other income and revenues of the municipalities in contravention of La.Const. art. VI, § 37(A).
Hence, I do not consider that the power sales contracts and the proposed bonds are authorized by law. Accordingly, I respectfully dissent.
NOTES
[1] In this Court LAMPCO has both timely sought writs (No. 61,586) and appealed (No. 61,622). Revised Statute 13:5128 which is found in the statute authorizing, and setting forth the procedure for, lawsuits to determine the validity of governmental bonds (R.S. 13:5121-5130) purports to grant a review by this Court by appeal. That statute would seem to be in conflict with Article 5, section 5(D) of the Louisiana Constitution which, setting forth the appellate jurisdiction of the Louisiana Supreme Court, provides that ". . . a case shall be appealable to the Supreme Court if (1) a law or ordinance has been declared unconstitutional; (2) the defendant has. been convicted of a felony or a fine exceeding $500 or imprisonment exceeding six months actually has been imposed." Article 5, section 5(D) does not apply to the present case because the Court of Appeal has not held any law or ordinance unconstitutional. Thus, we must dismiss the appeal in this case while realizing that identical contentions are now before us in the timely-filed application for writ of review.
[2] The portions of R.S. 33:1321-1337 and those sections of the 1974 Louisiana Constitution referred to herein are set out more fully in an appendix attached to this opinion.
[3] As we understand the situation, until such time as the plant is operative and surplus energy is being sold by LAMPCO to entities other than the four cities, there is no "LAMPCO revenue" or prospective revenue other than that which will be derived from the power sales contracts of four cities.
[4] We deem it worth noting that, as structured, payment on the outstanding bonds does not begin until after the project's scheduled completion and the onset of energy production.