CUTRER, Judge.
This case involves a challenge by a city attorney to the authority of a “special counsel” employed by a city council.
Chris J. Roy, City Attorney of the City of Alexandria, sought a Writ of Quo Warran-to against Guy E. Humphries, Jr., wherein Mr. Humphries was directed to show the authority under which he was exercising the office of special counsel for the City of Alexandria in litigation brought by the City against the Mayor of Alexandria, John K. Snyder. The trial court found that Mr. Humphries sufficiently established the authority by which he held the position of special counsel for the Alexandria City Council and dismissed Mr. Roy’s petition. Mr. Roy appealed and we affirm.
FACTS
As a matter of background, we will relate the facts which underlie the litigation between the City Council and the Mayor which, in turn, is the basis of the instant case.
In the 1970’s, the price of natural gas, the basic feedstock of most municipal owned power plants, began a rapid rise. In the late 1970’s, nine municipalities in central and south central Louisiana formed the Louisiana Energy and Power Authority *131 (LEPA) to seek ways to insure a constant “low cost” source of electrical power for themselves and the citizens of the member communities. The City of Alexandria, which owned a gas-fired municipal power plant, was a charter member of LEPA. In fact, the then mayor of Alexandria, Mr. Carroll Lanier, was a prime mover in the creation of LEPA and served as the chairman of the LEPA Board of Directors.
On December 30, 1982, five members of LEPA, including the City of Alexandria, joined together to purchase a 20% interest in the “Rodemacher # 2 Plant,” a coal fired electrical generating facility owned by Central Louisiana Electric Company, Inc., for a bonded indebtedness of $109,515,000.00. On November 15, 1982, in anticipation of LEPA’s purchase of an interest in Rode-macher # 2, the City of Alexandria had entered into a “Power Sales Contract,” dated October 1, 1982, with LEPA which obligated the City to begin purchasing its power from LEPA as of January 1, 1983.[1]
In November 1982, between the date of the “Power Sales Contract” and the time the City was to begin receiving power from LEPA and Rodemacher # 2, Mr. Snyder defeated Mr. Lanier in the Alexandria may-orial election. Mayor Snyder was sworn in on December 6, 1982. Mayor Snyder appointed Mr. Roy city attorney on December 21, 1982; the City Council confirmed Mr. Roy. At that time both Mayor Snyder and Mr. Roy made public statements which indicated that neither the new mayor, nor his appointee, Mr. Roy, intended to honor the contract between the City of Alexandria and LEPA. In furtherance of this announced decision, Mayor Snyder refused, in mid-December shortly after assuming his mayorial duties, to certify the pledge of revenues to secure LEPA’s bonds. The pledge of the City of Alexandria was ultimately certified by the president of the Alexandria City Council and LEPA completed its purchase of an interest in Rode-macher # 2.
On January 1, 1983, the day Alexandria was supposed to begin purchasing its electrical power from LEPA, Mayor Snyder directed the superintendent of the City’s power plant to generate all of the electrical power needed in the City of Alexandria. As stated in Mr. Roy’s brief, “[ijmmediately conflict ... ensued because of the may- or’s breach of the LEPA contract, [and] his determination to end future collaboration with the LEPA consortium.”
Faced with this active breach of the City’s contract with LEPA by the» mayor, the City Council, on January 7, 1983, adopted a resolution (Resolution No. 2403-1982) directing the mayor to implement the provisions of the “Power Sales Contract;” this resolution was immediately presented to the mayor. Mayor Snyder refused to comply with this directive from the City Council. Later that same day, January 7, 1983, the City Council declared an “extreme public emergency” existed in the City of Alexandria and retained Mr. Hum-phries to represent the Council. (Ordinance No. 3-1983) The contract of employment between the City Council and Mr. Humphries was reviewed and approved by *132 the attorney general as required by LSA-R.S. 33:1813 and Ordinance No. 3-1983.
In his capacity as “special counsel” to the City Council, Mr. Humphries brought suit against Mayor Snyder to mandamus the mayor to carry out the contract the City of Alexandria had previously entered into with LEPA. Mr. Roy, as city attorney, filed the instant action, a Writ of Quo War-ranto, to force Mr. Humphries to show by what authority he was acting on behalf of the City Council.
The above factual recitation provides the background for and brings us once again to our original question: Has Mr. Humphries sufficiently shown the authority under which he acted?
THE DECISION OF THE TRIAL COURT
After a hearing, on January 17 and 18, 1983, the trial judge found that Mr. Hum-phries had established sufficient authority to represent the City Council and dismissed Mr. Roy’s demands at his costs. The written reasons for judgment provided by the trial judge contained the following:
“In proceeding to reach a decision on the merits, the Court felt that while Mr. Roy’s attack upon Mr. Humphries’ status might more preferably have [been] brought in the form of injunctive relief and that the quo warranto action may appear somewhat wobbly because of the factual situation being sometimes in-definitive, nevertheless, he (Chris J. Roy) does claim a sort of usurpation of some specie of office or position, and since both parties are before the Court (defacto if no dejure), the Court should proceed to decide the case on the merits.

“Section 2-06 of the Home Rule Charter of the City of Alexandria reads as follows:

‘All powers of the City shall be vested in the Council, except as otherwise provided by law or this charter, and the councils shall provide for the exercise thereof and for the performance of all duties and obligations imposed upon the City by law.’

“Unless otherwise provided, this broad and rather sweeping authority would appear to permit the Council to do such a thing as obtain legal counsel.

. “Article 4, Section j-02(D) of the Alexandria Home Rule Charter provides as follows:

‘No special legal counsel shall be employed by the City except by written contract and approval of the City Council. ’

“While this provision may have been intended as a governor on the administrative arms securing of excessive legal services, its language is sufficient to authorize the City Council to secure special counsel.

“City Councils routinely retain special counsel all the time for such things as bond issues, etc. As a matter of fact, the Alexandria City Council just recently retained ... [a local attorney] as special counsel in connection with the finalization of the Louisiana Energy and Power Authority Bond Issue.

“Moreover, Louisiana Revised Statutes 33:1813 authorize municipalities ‘in extreme necessity’ to employ additional counsel. The Court feels in view of all of the facts and circumstances surrounding this matter that an extreme necessity did exist in connection with the City Council’s actions in retaining special counsel.

“In any event, if the City Council has a standing in court, and I believe that it does, it goes without saying that it has a right to be represented by counsel under the fundamental concepts of our American legal system.

“The Contract of Employment in this case is in full compliance with the law; therefore, the Court finds that Guy E. Humphries, Jr. has sufficiently established the authority by which he holds the position of special counsel for the Alexandria City Council, and the other plaintiffs in Civil Suit Number 125,647 on the docket of this court.

“The demands of the plaintiff in this suit (docket number 125,685) are de
*133
nied, and the plaintiff is assessed for court costs. ”

Mr. Roy has appealed the above dismissal by the trial court citing nine assignments of error. We note that several of these assignments deal with the ability and validity of the City of Alexandria bringing suit against Mayor Snyder; the appeal of the district court ruling in Civil Suit Number 125,647 has been dismissed upon joint motion of the parties to that action and issues concerning that case are not now before us. What is before us is an appeal of the trial court’s ruling on the narrow question of quo warranto.
The purpose of a writ of quo war-ranto is to order the defendant, Mr. Hum-phries in this case, to show by what authority he is acting. C.C.P. articles 3901 and 3902. Considering the entire record of this case, particularly the underlying dispute between the City Council and Mayor Snyder over the LEPA contract, we cannot say the trial judge was clearly wrong in his factual determination that an “extreme necessity” existed in connection with the City Council’s hiring of Mr. Humphries. Given such a finding, LSA-R.S. 33:1813 specifically authorizes the actions taken by the City Council and this action is, in part, the authority under which Mr. Humphries acted. Further, we agree with the trial judge’s reasoning concerning the quoted portions of the Alexandria Home Rule Charter and his reliance on these as additional authority to support Mr. Humphries’ actions.
For these reasons, the judgment of the trial court is affirmed. Appellant, Mr. Chris Roy, shall pay the costs of this appeal.
AFFIRMED.

. Ordinance No. 17501982 adopted by the Alexandria City Council on September 28, 1982, authorized Mayor Lanier, and City Clerk Jon W. Grafton, to enter into the "Power Sales Contract” on behalf of the City.
The "Power Sales Contract" with the City of Alexandria, and similar contracts with the four other LEPA member municipalities which joined in the purchase of a portion of Rode-macher # 2, were entered into prior to the actual purchase of Rodemacher #2 because, as a condition for the sale of the bonds which covered the purchase price, the revenues to be generated by the "Power Sales Contract” were to be pledged as security for the bonds. See: Bd. of Com’rs of La. v. All Taxpayers, Etc., 360 So.2d 863 (La.1978), in which the Louisiana Supreme Court, overruling a decision by this court, found that such contracts and pledges of future revenues as security for bonds was allowable. The LEPA bonds were issued pursuant to the State Power Authority Act, LSA-R.S. 33:4545.1 et seq. The provisions reviewed by the Supreme Court in Bd. of Com’rs of La., were LSA-R.S. 33:1321-1337, the "local services law.” The statutory framework of these two sets of statutes is very similar and we see no reason that the rational of Bd. of Com’rs of La. would not apply, in this case, to similar questions as were addressed by the Supreme Court.