CARTER, Judge.
This is an appeal from a trial court judgment granting plaintiffs motion for judgment.
FACTS
The East Baton Rouge Sewerage Commission (Commission), a joint commission and agency/instrumentality of the Parish of East Baton Rouge (Parish), the City of Baton Rouge (City), and the Greater Baton Rouge Consolidated Sewerage District (Sewerage District), is a corporate political subdivision of the State of Louisiana created by virtue of an intergovernmental agreement among the Parish, the City, and the Sewerage District and under the authority of LSA-R.S. 33:1321-1337, sometimes known as the local services law. The Commission proposes to raise $70,000,000 by issuing sewer revenue bonds under LSA-R.S. 33:1321-1337, the proceeds to be used to finance the cost of upgrading, rehabilitating, enlarging, and improving the sewerage system. The primary source of security for the bonds are sewer user fees derived from the operation of the sewerage system.
Plaintiff, Walter Penny, is a citizen and resident of the Parish as well as a taxpayer and rate payer in the Parish. Plaintiff filed a motion for judgment seeking to enjoin the Parish and the Commission from issuing and selling the $70,000,000 of sewer revenue bonds and to have declared illegal and unenforceable certain provisions of the local services agreement.
The trial court rendered judgment granting plaintiff’s motion for judgment upon finding that the resolution and intergovernmental agreement were unconstitutional. The Parish and the Commission appealed to the Louisiana Supreme Court, which transferred the case to this court for an expedited hearing.
On appeal, the Parish and the Commission assign the following specifications of error:
1. The District Court erred in finding that the Resolutions of the Parish of East Baton Rouge and of the Baton Rouge Sewerage Commission relating to the Restated Intergovernmental Agreement and the Bonds were issued by the Commission in violation of Art. 6, § 37 of the Louisiana Constitution.
2. The District Court erred in finding that the Resolutions of the Parish of East Baton Rouge and of the Baton Rouge Sewerage Commission relating to the Restated Intergovernmental Agreement and the Bonds were issued by the Commission in violation of R.S. 39:1014 and 1019.
DISCUSSION
Plaintiff challenges the validity of portions of the Intergovernmental Agreement and the sewerage revenue bond resolution, contending that some of the “funds” which will be used to secure the bond issue are not derived solely from sewer user fee revenues, contrary to the provisions of LSA-Const. art. 6, § 37 and LSA-R.S. 39:1014 and 1019. Plaintiff reasons that the Intergovernmental Agreement requires the Parish to contribute $8,000,000 annually for costs of operation, maintenance, and administration of the sewerage system in derogation of law.
The Parish and the Commission contend that the actions taken by the Parish and the Commission, which form the foundation of the sewerage revenue bond issue, are valid, constitutional means for funding certain EPA-mandated sewerage system upgrading. The Parish and the Commission reason that all payments on the bond indebtedness will be derived exclusively from *1239 charges for use of the system and that, as such, there will be no charge against the general revenues of the Parish to repay the bond indebtedness. In support of this contention, the Parish and the Commission rely on Board of Commissioners of Louisiana Municipal Power Commission (LAMPCO) v. All Taxpayers, Property Owners, and Citizens, 360 So.2d 863 (La. 1978).
The Parish’s and the Commission’s reliance on Board of Commissioners of Louisiana Municipal Power Commission (LAMPCO) v. All Taxpayers, Property Owners, and Citizens, supra, is misplaced. In LAMPCO, the Louisiana Supreme Court liberally construed the language of LSA-R.S. 33:1334(A) providing that “any revenue bonds of such commission to finance the cost of the construction or acquisition or improvement of such public projects or improvements ... payable ... solely from the revenues derived from the operation of the public project constructed or acquired with the proceeds of such revenue bonds.” (emphasis added) The court in LAMPCO determined that the “revenues derived from the operation of the public project” included all LAMPCO revenues “including those to be derived from the power sales contracts between LAMPCO and the four cities” involved. The court further found that the power sales contracts and proposed bonds did not violate LSA-Const. art. 6, § 37(A). The court stated:
While there is an obligation to pay whether or not the project has been completed and project power and energy furnished, that obligation or debt is payable only from the revenues and receipts of the respective combined municipal utility systems of the four cities. See Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969); McCann v. Mayor of Morgan City, 173 La. 1063,139 So. 481 (1932). It is not payable from the member cities’ entire revenues and assets, although conceivably customers of the utility may be exposed to increased charges, in the event the project fares worse than the feasibility studies suggest. Nonetheless, the general or “other income and revenues of the political subdivision” (La. Const, art. 6, § 37(A)) can in no way be charged or burdened with payment of the revenue bonds at issue. Similarly, possible loss to the cities’ general funds of net utility revenues, while perhaps affecting solvency (or indirectly requiring generation of additional general income or revenues), does not convert a charge against utility revenues to a charge against other income and revenues. The power sales contracts and the proposed bonds do not violate Article 6, § 37(A) of Louisiana Constitution of 1974. [360 So.2d at 868]
In the instant case, the Parish has agreed to contribute $8,000,000 annually, through its budgeting process, toward the “operation, maintenance, and administrative costs” of the public project.
The pertinent portions of the Intergovernmental Agreement provides as follows:
11.3 In return for the benefits of the System that will accrue to the Parish and its citizens and in payment for the services to be furnished by the improvements to be financed and provided by the Commission (whether or not such improvements are even constructed or placed into service), beginning as of October 1, 1986 and for a period of forty years thereafter, on behalf of the Commission the Parish has agreed and continues to agree to operate, maintain and administer the System, as it exists and as it may be improved, in an economical and efficient manner, in keeping with sound utility practices, including the maintenance of insurance and fidelity bonds. In that capacity, the Parish shall continue to levy rates and collect charges to be paid by the customers of the System, shall deposit such funds in the General Revenue Fund created by the Bond Resolution, and shall reimburse itself from the proceeds of such rates and charges its costs of operation, maintenance and administration in each calendar year which exceeds the sum of Eight Million Dollars ($8,000,000). The City and Parish, through their governing authority, the *1240 Metropolitan Council of the Parish of East Baton Rouge, shall provide the funding for the Parish’s obligations under this Agreement through its annual budgeting process. The Parish may be reimbursed for all or a portion of the first Eight Million Dollars ($8,000,000) of its costs in the event that the Commission’s Consulting Engineer (as defined in the Bond Resolution) finds and determines that the amount of such reimbursement exceeds the required payments to all funds created and maintained in connection with the revenue bonds of the Commission. It is agreed that the Parish shall levy sufficient rates and collect sufficient charges to meet all costs of the System unpaid from other sources, and to pay the obligations of the Commission under the provisions of all covenants contained in the resolution providing for the issuance of revenue bonds. In the event the Parish should fail to levy such rates and collect such charges in such a fashion as to satisfy such revenue bond obligations, the Commission shall assume and exercise the power to levy such rates and collect such charges.
That in order to insure appropriate revenues for the security of payment of the $27,000,000 Certificates of Indebtedness, Series 1987, dated July 1, 1987, and such other financings as may be necessary to pay the costs of improving the System as required by the Environmental Protection Agency and the Department of Environmental Quality, the Parish shall not be entitled to receive compensation for the first $8,000,000 of the costs of maintaining, operating and administering the System from any of the revenues of rates and charges levied as of June 2, 1987 as long as said Certificates of Indebtedness are outstanding, nothing to the contrary contained in the Present Agreement withstanding.
Further, the pertinent portion of the Bond Resolution states:
SECTION 5.02. Enforcement of Parish Obligations Under the Agreement. It is recognized that the Parish has obligated itself to provide operations, maintenance and administrative services to the System to a value of $8,000,000 pursuant to the terms of the Agreement, and the Commission hereby convenants that it will take all necessary actions to enforce such obligation and the Bondholders shall have all rights to compel the Commission to require appropriate discharge of such obligation and to require the Parish to discharge such obligation not prohibited by law.
The trial judge pointed out, in his written reasons for judgment, that the stipulation submitted by the parties and admitted into evidence shows that without the annual $8,000,000 contribution of the Parish toward operation and maintenance costs, the sewer user fees will be insufficient to meet the project costs and the debt service. The stipulation shows that the debt service on the combined bonds[1] will be approximately $14,270,000 per year which, when combined with the projected operation and maintenance expense,[2] will exceed the annual sewer user fee revenues.
A careful reading of the pertinent documents, including the Intergovernmental Agreement and Bond Resolution, does not reveal that the Parish’s obligation to contribute $8,000,000 annually to operation and maintenance costs is confined to use of sewer user fees. In fact, the agreements reflect that the Parish’s contribution is derived from funds other than sewer user fees. However, there is no evidence in the record identifying the exact source for the *1241 Parish’s $8,000,000 contribution. The Parish is obligated under the Intergovernmental Agreement to appropriate $8,000,000, from its general fund, revenue other than “revenues derived from the operation of the public project” so that there are sufficient annual revenues to secure payment of debt service on the proposed $70,000,000 of sewer revenue bonds and/or to pay for operation, maintenance, and administration expenses as is expressly set forth in the Bond Resolution.
LSA-Const. art. 6, § 87 provides:
(A) Authorization. The legislature by law may authorize political subdivisions to issue bonds or other debt obligations to construct, acquire, extend, or improve any revenue-producing public utility or work of public improvement. The bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery, and equipment or by the pledge of the income and revenues of the public utility or work of public improvement. They shall not be a charge upon the other income and revenues of the political subdivision.
(B) Exception. This Section shall not apply to a school board. (Emphasis added)
LSA-R.S. 39:1014 provides as follows:
A.Any bonds or other debt obligations issued under this Part shall be payable solely from the revenues derived from the work of public improvement, - constructed, acquired, extended, or improved with the proceeds thereof, sufficient in amount at all times to meet the required debt service, subject only to pri- or payment of reasonable and necessary expenses of operating and maintaining such work of public improvement. In connection with the construction, acquisition, extension, or improvement of any such revenue-producing work of public improvement, any political subdivision is authorized to accept, receive, receipt for, disburse, and expend federal and state monies and other monies, public or private, whether available by grant or loan, or both, for such purposes.
B. The work of public improvement shall remain subject to such pledge of revenues or mortgage as may have been authorized by resolution of the governing body under the authority of this Part until the payment in full of the principal and interest on said bonds or other debt obligation, and the mortgage or pledge may be foreclosed by seizure and sale of the encumbered property in a manner provided by law for the foreclosure of conventional mortgages including the right to executory process.
C. Any holder of the bonds or other debt obligations or of any of the attached coupons, if any, may be suit, action, mandamus, or other proceedings, protect and enforce the security provided for in this Part, and may be suit, action, mandamus, or other proceedings enforce and compel performance of all of the duties required to be performed by the governing body and officials of the political subdivision by the provisions of this Part and the proceedings authorizing the issuance of such bonds or other debt obligations. LSA-R.S. 39:1019 provides as follows:
When any such political subdivision has issued bonds or other debt obligations and pledged the revenues of any work of public improvement in whole or in part for payment thereof, it shall impose and collect fees and charges for the products, commodities, and services furnished by such work of public improvement, including those furnished to the subdivision itself and its various agencies and departments, in such amounts and at rates as shall be sufficient at all times to pay the expenses of operating and maintaining the work of public improvement; provide a sinking fund sufficient to assure the prompt payment of principal and *1242 interest on the bonds or other debt obligation as each falls due; provide such a reasonable fund for contingencies as may be required by the resolution authorizing the bonds or other debt obligation and provide an adequate depreciation fund for those repairs, extensions, and improvements to the work of public improvement as may be necessary to assure adequate and efficient service to the public. No board or commission other than the governing body of the political subdivision shall have authority to fix or supervise making of such fees and charges.
*1241 1988 1989 1990 1991 1992
Sewer User Fee Revenues $20,980,000 $20,480,000 $20,680,000 $20,680,000 $20,680,000
Operation and Maintenance Expense $13,344,000 $14,865,000 $15,630,000 $16,446,000 $17,316,000
*1242 Clearly, although LSA-R.S. 33:4169.2 A authorizes any parish having a population of at least one hundred thousand to contract for treatment and disposal of sewage and liquid and solid wastes and to pledge or dedicate any parish revenues legally available for such purposes, LSA-Const. art. 6, § 37 and LSA-R.S. 39:1014 and 1019 require that the Parish’s $8,000,000 contribution be derived from the operation of the public project and constitute revenues legally available for such use. Herein, the evidence demonstrates that the $8,000,000 is derived from funds other than those derived from the operation of the public project and are not legally available for such purpose. Clearly, without the $8,000,-000 contribution by the Parish, the sewer user fees will be insufficient to meet operation and maintenance costs, project costs, and debt service. To the extent the Intergovernmental Agreement and Bond Resolution require the illegal use of this $8,000,-000 of parish revenues derived from funds other than from the operation of the public project, they constitute a charge upon other income and revenues of the Parish, in direct violation of LSA-Const. art. 6, § 37, and are invalid.
We recognize that the Parish and the Commission are burdened with imminent and serious sewerage problems and that the EPA has mandated that the system be upgraded within limited time constraints. However, the Parish and the Commission have selected a plan which involves dedicating $8,000,000 in revenues for payment of operating expenses, which are not legally available for such purposes, in derogation of the Louisiana Constitution and other statutory authority. There are certainly other ways to accomplish the purposes and objectives that are in accordance with law and not violative of express constitutional provisions.[3]
CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs in the amount of $2,060.04 are assessed against the Parish and the Commission.
AFFIRMED.
WATKINS, J., concurs.

. The evidence shows that the Commission previously issued $27,000,000 of Certificates of Indebtedness, Series 1987, dated July 1, 1987, and now proposes to issue an additional $70,000,000 of Sewer Revenue Bonds, Series 1987, dated September 1, 1987. The figure of $14,270,000 represents the projected annual debt service on both bonds.

. The following figures represent the Parish’s and the Commission’s projections for sewer user fee revenues and operation and maintenance expense for a five-year period:

. See Murchison, Work of the Appellate Court (1978-1979) — Local Government Law, 40 La. Law Rev. 687 (1980).